344 F.3d 959
 Hotel & Motel Association of Oakland; Balu K. Patel; Usha B. Patel; Navin Patel; Tara N. Patel; Bharat Patel; Niketa Patel, Parsottam B. Patel; Gita Patel; Vinod P. Patel; Madhuben V. Patel; Jagdish Patel; Bharti J. Patel; Ramesh D. Patel; Thakorbhai G. Patel; Manjuben T. Patel; Kirit S. Patel; Ranjan K. Patel; Manubhai L. Patel; Shardaben M. Patel; Pravin Patel; Sima Patel; Natwarbhai Patel; Jagdishkumar B. Patel; Jayeshkumar D. Patel; Hasmukh B. Patel; Bhisma Patel; Babubhai K. Patel; Kalaben B. Patel; Vallabh H. Patel; Jamanaben V. Patel; Ranchodbhai D. Patel; Parbhubhai V. Patel; Kamuben P. Patel; Govindbhai Z. Patel; Madhuben G. Patel; Jotindra Patel; Rekha J. Patel; Dilip P. Patel; Kalpana D. Patel; Anil P. Kumar; Sunita A. Kumar; Rajendra K. Kalyan; Pushpa R. Kalyan; Bhupendra K. Kalyan; Bhartiben B. Kalyan; Narbada Kalyan Kalyan; Harish Sharma; Naresh Patel; Bobby Newman, Plaintiffs-Appellants,
v.
City of Oakland, a municipal corporation; City of Oakland Police Department; City of Oakland Police Officer D. Martinez Sued As Doe 1; City of Oakland Police Officer T. Martin Sued as Doe 2; Oakland Housing Inspector Ronald Abab sued as Doe 3; City Housing Inspector Gerald Donahue Sued as Doe 4, Defendants-Appellees.
 No. 02-15220.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 10, 2003 — San Francisco, California.
 Filed September 17, 2003.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Frank A. Weiser, Los Angeles, CA, for the appellants.
 John A. Russo, City Attorney; Randolph W. Hall, Assistant City Attorney; Arlene Rosen, Deputy City Attorney; and Christopher Kee, Deputy City Attorney, Oakland, CA, for the appellee.
 Appeal from the United States District Court for the Northern District of California; Thelton E. Henderson, District Judge, Presiding. D.C. No. CV-99-03758-THE/JCS.
 Before NOONAN, McKEOWN, and RAWLINSON, Circuit Judges.
 OPINION
 McKEOWN, Circuit Judge.
 
 
 1
 This case arises from a constitutional challenge to a pair of city ordinances that place maintenance and habitability restrictions on hotels, motels, and rooming houses ("hotels") located in Oakland, California. One ordinance requires all hotels to comply with certain maintenance, habitability, security and record-keeping standards. The other ordinance reclassifies those hotels with so-called "non-conforming use" status to "Deemed Approved" status, and requires Deemed Approved hotels to comply with the new standards in order to retain that status. Appellants, the owners and operators of various Oakland hotels as well as their trade association, challenge the ordinances as an unconstitutional taking under the Fifth Amendment. They also claim that the ordinances violate their Fourteenth Amendment rights to procedural due process and equal protection and are unconstitutionally vague. We conclude that the ordinances pass constitutional muster and thus affirm the district court's dismissal of the action.
 
 BACKGROUND
 
 2
 In spring of 1999, the Oakland City Council enacted two ordinances for the express purpose of improving the physical conditions in and around hotels within Oakland. The Council had found over the preceding several years a continuing pattern of illegal activity, including prostitution and drug use, associated with many hotels that were poorly maintained. Steps to control the problem activities, including increased policing and the filing of civil abatement actions by the City Attorney, resulted in little success. The Council concluded that regular maintenance and adequate property management would lead to better outcomes.
 
 
 3
 The first of these ordinances, Ordinance No. 12136, amends the Oakland Municipal Code ("OMC") to add Chapter 8.03 ("Operating Standards for Hotels, Motel[sic] and Rooming Houses"),[1] which sets forth in detail various regulations with respect to housekeeping conditions, property security, and prevention of criminal and nuisance activity.[2] The ordinance also amends Chapter 5.34 of the OMC to add specific record-keeping requirements relating to guest receipts.
 
 
 4
 The companion measure, Ordinance No. 12137, amends the Oakland Planning Code ("OPC") to create a "Deemed Approved Hotel Program" at Chapter 17.157. The ordinance reclassifies as "Deemed Approved Hotel Activities" all of those hotels that previously had "legal nonconforming use" status[3] and requires that Deemed Approved hotels comply with the new performance standards established by Ordinance No. 12136. Failure to abide by the new performance standards constitutes an infraction, and may result in misdemeanor prosecution, fines, and enforcement actions. OPC § 17.157.180. Violations may ultimately lead, after a public hearing and administrative review, to revocation of a hotel's Deemed Approved status. OPC § 17.157.120.
 
 
 5
 The Hotel & Motel Association of Oakland and a number of individual hotel owners and operators (collectively the "Association") brought this action challenging the ordinances under both the United States and California Constitutions. After various interim rulings in which the district court dismissed certain of the Association's claims, the parties agreed to a Stipulation and Judgment of Dismissal, which was entered by the district court. Under the Stipulation and Judgment of Dismissal, certain claims were "dismissed with prejudice with no right of appeal," while the remaining claims were "preserved for appeal."
 
 
 6
 As a result of these proceedings, the only claims remaining on appeal are: a claim alleging an unconstitutional taking of property under the Fifth Amendment, claims alleging violations of the procedural Due Process and Equal Protection clauses of the Fourteenth Amendment, and a facial challenge alleging that the Oakland ordinances are unconstitutionally vague.
 
 DISCUSSION
 I. JURISDICTION
 
 7
 Although the parties did not question appellate jurisdiction, we raised the issue sua sponte and requested supplemental briefing. See WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1135 (9th Cir.1997) (en banc) ("[W]e have raised [the question of jurisdiction] sua sponte, as we must."). Our concern arose because of the posture of the district court's initial order granting in part the City's Rule 12(b)(6) motion to dismiss. Some of the claims addressed by the order were dismissed "without prejudice," and it was not clear from the parties' initial briefing whether the court had entered a final judgment dismissing the action in its entirety.
 
 
 8
 "A ruling is final for purposes of [28 U.S.C.] § 1291 if it (1) is a full adjudication of the issues, and (2) clearly evidences the judge's intention that it be the court's final act in the matter." Nat'l Distrib. Agency v. Nationwide Mut. Ins. Co., 117 F.3d 432, 433 (9th Cir.1997) (internal quotation marks omitted). The record before us demonstrates that the district court intended to dismiss the action in its entirety after an adjudication of all the issues, despite the fact that some claims were originally dismissed without prejudice. By its terms, the Stipulation and Judgment of Dismissal signed by the district court served as an "entry of dismissal of the ... action." The procedural history leading up to that order documents the court's intent. After several of the claims in the First Amended Complaint were dismissed without prejudice, the Association reincorporated those claims in a Second Amended Complaint. Following the court's subsequent order granting judgment on the pleadings as to the Second Amended Complaint, the only claims that remained were a Fourth Amendment claim brought by individual plaintiffs against the City and an Equal Protection claim based on discriminatory intent. Both claims were dismissed with prejudice with no right of appeal in the Stipulation and Judgment of Dismissal. Accordingly, the district court's dismissal of the action constituted a reviewable final decision and we have jurisdiction pursuant to 28 U.S.C. § 1291. See De Tie v. Orange County, 152 F.3d 1109, 1111 (9th Cir.1998) ("[D]ismissal of an action, even when it is without prejudice, is a final order." (emphasis added)).
 
 II. FIFTH AMENDMENT TAKINGS CHALLENGE
 
 9
 We first address the facial takings claim brought under the Takings Clause of the Fifth Amendment. "A facial challenge involves a claim that the mere enactment of a statute constitutes a taking," and is to be distinguished from an "as applied" challenge, which "involves a claim that the particular impact of a government action on a specific piece of property requires the payment of just compensation." Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 686 (9th Cir.1993) (citation and internal quotation marks omitted). The Association, which faces an "uphill battle" in bringing this facial attack, Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 495, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987), urges that the mere enactment of Ordinance No. 12137 constituted a "regulatory taking" of property by the City.
 
 
 10
 As we have explained previously, "[a] regulatory taking occurs when the value or usefulness of private property is diminished by a regulatory action that does not involve a physical occupation of the property." Levald, 998 F.2d at 684. In contrast to condemnations and physical takings, which find their origin in the plain language of the Fifth Amendment, regulatory takings are "of more recent vintage" in the Supreme Court's jurisprudence and do not easily lend themselves to the straightforward application of set formulas and categorical rules. Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 322, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002). Nevertheless, "the contours have been established: a land use regulation does not constitute a taking if the regulation does not deny a landowner all economically viable use of the property and if the regulation substantially advances a legitimate government interest." Buckles v. King County, 191 F.3d 1127, 1140 (9th Cir.1999).
 
 
 11
 The district court appropriately rejected as "unripe" the Association's contention that its members are being denied economically viable use of their land. "Under our precedents, a facial takings claim alleging the denial of the economically viable use of one's property is unripe until the owner has sought, and been denied, just compensation by the state." San Remo Hotel v. City and County of San Francisco, 145 F.3d 1095, 1101 (9th Cir.1998). This jurisdictional predicate is grounded in the text of the Fifth Amendment and in the Supreme Court's admonition that "no constitutional violation occurs until just compensation has been denied." Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194 n. 13, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). As the district court correctly pointed out, nowhere in its pleadings does the Association aver that it has pursued state administrative or judicial remedies to seek just compensation. Accordingly, the takings claim, insofar as it alleges a denial of economically viable use, is unripe for review.[4]
 
 
 12
 The Association also pursues an alternative facial taking theory, namely that Ordinance No. 12137 does not substantially advance a legitimate state interest. The just compensation ripeness requirement does not apply to this claim, as it does not depend on the extent to which the Association was compensated. See Sinclair Oil Corp. v. County of Santa Barbara, 96 F.3d 401, 406 (9th Cir.1996) (citing Yee v. City of Escondido, 503 U.S. 519, 533-34, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992)). Rather, the claim is based on the assertion that the municipality never had constitutional authority to adopt the ordinance, regardless of any compensation that might be offered. See Daniel v. County of Santa Barbara, 288 F.3d 375, 385 (9th Cir.2002), cert. denied, 537 U.S. 973, 123 S.Ct. 466, 154 L.Ed.2d 329 (2002). We therefore address this claim on the merits.
 
 
 13
 The Association's central contention is that whether the challenged ordinances substantially advance a legitimate state interest presents a factual question incapable of resolution on a motion to dismiss prior to discovery. The Association relies heavily on language by the Supreme Court in Penn Central Transportation Co. v. New York City, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), where the Court characterized regulatory takings cases as "essentially ad hoc, factual inquiries." The Association argues that because it has alleged that there is neither specific evidence of a legitimate government purpose nor any evidence that the regulation is reasonably related to such a purpose, the district court was premature in dismissing its claim.
 
 
 14
 The Association's reading of the regulatory takings jurisprudence, as well as the record in this case, is unduly restrictive. The Supreme Court phraseology seized upon by the Association does not stand for the position that every inquiry into the appropriateness of a regulation's purpose or adopted means of implementation requires the development of a sophisticated factual record or, as the argument implies, resolution by a jury. Far from it. As the Court recently explained in Tahoe-Sierra, "ad hoc, factual" determinations frequently arise in regulatory takings cases because these cases, unlike those involving physical appropriation or condemnation (where the fact of a taking is typically obvious or undisputed), do not easily lend themselves to broad categorical rules. 535 U.S. at 321-326 & n. 17, 122 S.Ct. 1465. Regulatory takings claims, in short, do not easily fit into a pre-ordained construct or little box; individualized scrutiny of such claims does not foreclose resolution on a motion to dismiss or a motion for summary judgment.
 
 
 15
 Our decision in Buckles is instructive. In that case, land-owners whose property was redesignated for residential use argued that whether the decision substantially advanced a legitimate government interest was a jury question incapable of resolution on summary judgment. 191 F.3d at 1140. Following the district court's dismissal of the case, the Supreme Court decided City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 721, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999), in which the Court approved of a trial court's decision to let a jury decide whether, in light of the context and history of the development application process, a city's decision to reject a particular development plan substantially advanced a legitimate state purpose. We rejected the broad reading of Del Monte Dunes urged by the landowners and concluded that the Supreme Court did not intend to "swallow long-standing summary judgment principles and always require a jury trial to determine whether the government's interests were legitimate and substantial." Buckles, 191 F.3d at 1140.
 
 
 16
 We decline to adopt the remarkable position that determining whether an ordinance, on its face, substantially advances a legitimate state interest can never be decided on a motion to dismiss. We also reject the Association's position that the record before us is not sufficiently developed to warrant disposition at this stage. See Agins v. City of Tiburon, 447 U.S. 255, 261, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (looking to the state's justifications provided in the statute to conclude zoning ordinances substantially advanced legitimate interests).
 
 
 17
 Although the Association's takings challenge is directed to Ordinance No. 12137 and whether it advances a legitimate state interest, it is useful to discuss the ordinances in tandem. Both ordinances are supported by the same legislative findings and are intended to dovetail one another in enforcement. The ordinances, on their face, are directed toward protecting the health and welfare of citizens and visitors in Oakland. Based on legislative findings, the ordinances target an increasing concentration of illegal activity, unsanitary and dangerous conditions, and a variety of nuisances associated with problem hotels. The purpose is undeniably legitimate, see Keystone Bituminous Coal, 480 U.S. at 492, 107 S.Ct. 1232 (explaining that the "public interest in preventing activities similar to public nuisances is a substantial one" that rarely results in a taking), and the means chosen substantially advance that purpose.
 
 
 18
 A review of the ordinances and the extensive legislative findings reveals that the City documented the problems, undertook various approaches and efforts to abate the illegal activity and unsanitary conditions, and ultimately concluded that Ordinance Nos. 12136 and 12137 were in the "best interest" of the community. For example, the City Council found that the existing housing code did not address the problems and that the police spent inordinate time and resources policing certain businesses. Further, the problem businesses allowed open use of their property for drug and prostitution activity and took minimal action to curb this activity. The City also documented safety, security, health, and other hazards and, notably, concluded that "there is a correlation between high levels of drugs and prostitution activity and the existence of substandard and public nuisance conditions at the problem properties."
 
 
 19
 Ordinance No. 12136 institutes basic maintenance, housekeeping, and security regulations applicable to all hotels. Recognizing that civil abatement actions and other attempts to improve conditions were unsuccessful in the past, and that few legal nonconforming businesses have revocable land use permits, Ordinance No. 12137 takes the further step of refashioning nonconforming use status such that continued operation is conditioned on a business's compliance with the new regulations. A reasonable relationship exists between this regulatory action and the public purpose it is meant to serve. Thus, the ordinance substantially advances a legitimate government interest. See Chevron U.S.A., Inc. v. Cayetano, 224 F.3d 1030, 1041 (9th Cir.2000) (discussing Del Monte Dunes and explaining that a "challenged regulatory action `substantially advances' its interest if it bears a reasonable relationship to that interest.").
 
 
 20
 The Association also raises the concern that Oakland's new ordinances were enacted against the backdrop of existing statutory protection for nonconforming uses. OPC § 17.114.040, in effect at the time the ordinances were enacted, generally allows a nonconforming use to be continued and maintained indefinitely and the rights to such use run with the land.[5] According to the Association, Ordinance No. 12137 effectively extinguishes the non-conforming use guarantees of that provision.
 
 
 21
 But Oakland's new regulation does nothing of the sort. Nothing in Ordinance No. 12137 suggests that the redesignation of properties from "non-conforming" to "Deemed Approved" status has any effect on the conditional guarantees in Ordinance No. 12137 or any other statutory provisions applying to what were formerly known as legal nonconforming businesses.[6] Rather, the text of Ordinance No. 12137 mandates precisely the opposite. See OPC § 17.157.030(C) ("The Nonconforming Use provisions of the zoning regulations ... shall apply to the Deemed Approved Hotel regulations."). Even if we were to accept the Association's contention that a conflict exists between Ordinance No. 12137 and § 17.114.040, there is no substantive change with respect to the Association's use of its property other than compliance with basic health and safety regulations applicable to all other hotels. See City of Oakland v. Superior Court, 45 Cal.App.4th 740, 757, 53 Cal.Rptr.2d 120 (1996) (upholding a similar "Deemed Approved" program for liquor stores on the ground that "[a] municipality retains the right to abate nuisances and enforce its criminal laws even in the face of grandfather rights"); see also Bauer v. City of San Diego, 75 Cal.App.4th 1281, 1292-95, 89 Cal.Rptr.2d 795 (1999) (discussing grandfather rights of nonconforming businesses in context of deemed approved program).
 
 
 22
 In sum, because Ordinance No. 12137 substantially advances a legitimate state interest and no other takings claim was ripe for review, we conclude that the Association's takings claims were properly dismissed.
 
 III. PROCEDURAL DUE PROCESS CLAIM
 
 23
 The Association's procedural due process claim stems from a complaint that it did not receive an individualized hearing prior to the enactment of the ordinances. Whether the Association was accorded procedural due process when the new hotel regulations were enacted depends on the nature of the decision leading to the City's newly enacted regulations. Generally, if the "action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." Halverson v. Skagit County, 42 F.3d 1257, 1260 (9th Cir.1995) (as amended) (internal quotation marks omitted). This rule of thumb follows from the observation made by Justice Holmes almost a century ago that, even though an individual's property rights may be affected by the enactment of a general statute, "[w]here a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption." Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445, 36 S.Ct. 141, 60 L.Ed. 372 (1915).
 
 
 24
 Of course, public decision-makers cannot sidestep the dictates of due process by simply giving their actions a legislative moniker. Our cases have been careful to focus on the "character of the action, rather than its label," avoiding "formalistic distinctions between `legislative' and `adjudicatory' or `administrative' government actions." Harris v. County of Riverside, 904 F.2d 497, 501 (9th Cir.1990). In Harris, we held that, notwithstanding an action's outward appearance as a legislative act, greater procedural rights may attach where only a few persons are targeted or affected and the state's action "exceptionally affect[s]" them "on an individual basis." Id. at 502 (internal quotation marks omitted). By contrast, "our cases have determined also that governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individualized notice and hearing; general notice as provided by law is sufficient." Halverson, 42 F.3d at 1261.
 
 
 25
 The City Council's actions constituted the purest of legislative acts. Both ordinances are laws of general applicability affecting a broad geographic area and the complete range of hostelries, as opposed to one or a few individuals or establishments. Ordinance No. 12136, which sets forth a variety of operating standards, states that its provisions apply to all hotels "which provide shelter, furniture, linens, and housekeeping services, etc. within the guest room(s) and throughout the property." OMC § 8.03.030. Ordinance No. 12137, aimed at amending the non-conforming use regulations, indicates that "[t]he Deemed Approved Hotel regulations shall apply, to the extent permissible under other laws, to all Legal Nonconforming Hotels and Rooming Houses within the City." OPC § 17.157.030(A) (emphasis added).
 
 
 26
 The Association seeks refuge in Harris by arguing that, in adopting Ordinance No. 12137, the City targeted "a relatively small number of persons" who were "exceptionally affected" on an "individual basis." 904 F.2d at 502 (internal quotation marks omitted). But the mere fact that a subcategory of hotels motivated the City Council to act does not change the legislative quality of the ordinance. Unlike in Harris, where a county specifically targeted a single individual's property for a zoning change after notice had been published for an area-wide plan amendment, Ordinance No. 12137 is a garden variety statute affecting an entire class of Oakland hotels. None of the allegations made by the Association, or by the forty-nine individual plaintiffs who brought this action, support the claim that one or only a few individuals were targeted or affected.
 
 
 27
 Nor were any of the members of the Association "exceptionally affected ... on an individual basis." Harris, 904 F.2d at 502. Unlike in Harris, where the zoning decision completely altered the permissible uses of the individual's land by changing it from commercial to residential use, the ordinances effect no substantive change in the legal status of the hotels. The hotels still enjoy their non-conforming use privileges, only with a different label and with the added requirement that they abide by the most basic habitability and nuisance standards. Significantly, in the event of claimed non-compliance, a comprehensive administrative apparatus ensures that violators have the right to a noticed public hearing and an appeal. See OPC §§ 17.157.070-150.
 
 
 28
 When the City Council exercised its legislative functions in a lawful manner, the Association received all the process that was due. The Association's constitutional rights were "protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." Bi Metallic, 239 U.S. at 445, 36 S.Ct. 141. No additional individualized notice or hearing was required.
 
 
 29
 IV. EQUAL PROTECTION AND VAGUENESS CHALLENGES
 
 
 30
 The Association raises two final constitutional challenges to the Oakland ordinances: an equal protection claim and a vagueness challenge.
 
 A. EQUAL PROTECTION
 
 31
 The Association's only equal protection argument on appeal is that Ordinance No. 12137, unlike its counterpart Ordinance No. 12136, impermissibly targets nonconforming hotels. Because there is no allegation that the ordinance burdens a suspect class or a fundamental interest, the City must demonstrate only that the classification scheme is "rationally related to a legitimate state interest." City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).
 
 
 32
 Ordinance No. 12137 easily passes the "highly deferential" rational basis standard of review for the reasons we addressed in our analysis of the "substantially advance" requirement of the facial takings claim. See S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 507 (9th Cir.1990); see also Christensen v. Yolo County Bd. of Supervisors, 995 F.2d 161, 165-66 (9th Cir.1993) (concluding, in context of takings and equal protection challenges, that legislation both substantially advanced and was rationally related to legitimate state interest).
 
 
 33
 The direct links between the legislative findings and the scope of the ordinances serve to distinguish Oakland's scheme from City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), the case relied upon by the Association. In that case, the Supreme Court concluded that an ordinance requiring a special use permit for homes for the mentally retarded did not pass rational basis scrutiny because it was based on irrational prejudices rather than a showing that the home would pose a special threat to the city's interests. Id. at 448-49, 105 S.Ct. 3249. Here, by contrast, Deemed Approved hotels are subject to the same standards as all other hotels and, to the extent that those standards are uniquely enforced as a "condition" of Deemed Approved status, there is a reasonable justification for doing so. Ordinance No. 12137, on its face, states that "few or none of the legal nonconforming businesses have land use permits with associated conditions that can be revoked for violations of the conditions or public nuisance-related activities." This enforcement dilemma underscores that, unlike the ordinance invalidated in Cleburne, Oakland's enforcement scheme stems not from an irrational prejudice but rather from the unique traits of the target businesses. Ordinance No. 12137 does not deny the Association equal protection. See Board of Trustees v. Garrett, 531 U.S. 356, 366-67, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) ("Under rational-basis review, where a group possesses `distinguishing characteristics relevant to interests the State has the authority to implement,' a State's decision to act on the basis of those differences does not give rise to a constitutional violation." (quoting Cleburne, 473 U.S. at 441, 105 S.Ct. 3249)).
 
 B. VAGUENESS
 
 34
 The Association's vagueness claim comes in the form of a facial challenge, presenting a hurdle that is difficult for the Association to scale. To bring a successful facial challenge outside the context of the First Amendment, "the challenger must establish that no set of circumstances exists under which the [statute] would be valid." United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Although Salerno itself was not a void-for-vagueness case, the principle it articulated was a general one, and the Supreme Court previously explicitly limited facial vagueness claims under the same standard:
 
 
 35
 In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications.[7]
 
 
 36
 Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (footnotes omitted).
 
 
 37
 We recognize that, despite the Supreme Court's directive in Hoffman Estates and Salerno, the Court's most recent discussion of facial vagueness challenges has cast some doubt on the "no set of circumstances" requirement. In City of Chicago v. Morales, 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999), the Court did not apply the Salerno test in reviewing, and ultimately upholding, a facial challenge to an ordinance banning gang members from loitering in public places after being ordered to disperse. Rejecting the dissent's argument that Salerno's all-or-nothing test applied to all cases other than free-speech cases subject to the overbreadth doctrine, the plurality stated that the Salerno formulation was dictum. Id. at 55 n. 22, 119 S.Ct. 1849. The plurality further noted that it did not need to resolve the viability of the Salerno rule, which it characterized as a species of third-party standing, because Morales arose from a state, rather than a federal, court. Id. ("Whether or not it would be appropriate for federal courts to apply the Salerno standard in some cases—a proposition which is doubtful—state courts need not apply prudential notions of standing created by this Court.").
 
 
 38
 Although we have not had occasion to consider the impact of Morales on facial challenges under the void-for-vagueness doctrine, we have done so in another context. In S.D. Myers, Inc. v. City and County of San Francisco, 253 F.3d 461 (9th Cir.2001), we reviewed a facial challenge under the Commerce Clause and rejected the argument that Salerno had been undermined. Acknowledging the dicta of the Morales plurality, we observed:
 
 
 39
 [A]nother plurality of Justices is equally adamant that Salerno is the correct standard in every context, with the exception of certain First Amendment cases. See Stenberg v. Carhart, 530 U.S. 914, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000) (Thomas, J., dissenting, joined by two justices); Planned Parenthood of S. Arizona v. Lawall, 180 F.3d 1022, 1026 (9th Cir.1999). While we have held that [Planned Parenthood v. Casey, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)] `overruled Salerno in the context of facial challenges to abortion statutes,' Lawall, 180 F.3d at 1027, we will not reject Salerno in other contexts until a majority of the Supreme Court clearly directs us to do so.
 
 
 40
 Id. at 467. We subsequently applied the Salerno rule to another facial challenge outside the First Amendment context. See United States v. Bynum, 327 F.3d 986 (9th Cir.2003) (facial challenge to anti-bribery statute).
 
 
 41
 We stand by our holding in S.D. Meyers. Until a majority of the Supreme Court directs otherwise, a party challenging the facial validity of an ordinance on vagueness grounds outside the domain of the First Amendment must demonstrate that "the enactment is impermissibly vague in all of its applications." Hoffman Estates, 455 U.S. at 495, 102 S.Ct. 1186.[8] No such showing was made here, and even if the all-or-nothing principle were inapplicable, the Association's challenge cannot succeed. The ordinances are simply not vague on their face or in their application.
 
 
 42
 The Association takes issue with the requirement in Ordinance No. 12136 that prohibits hotel operators from contributing to nuisance activities on or in "close proximity to" the property, OMC § 8.03.120(A), but fails to allege that every (or any) application of that provision would qualify as unconstitutionally vague. Indeed, the Association fails even to identify how the ordinance would be impermissibly vague as applied to its own members. Without more, we have little trouble concluding that Ordinance No. 12136 provides sufficient notice to ordinary hotel owners of the conduct that is prohibited and gives law enforcement ample guidance to enforce it in a non-arbitrary way. Nunez v. City of San Diego, 114 F.3d 935, 940 (9th Cir.1997) (explaining that "an ordinance must (1) define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner.") (citing Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)).
 
 
 43
 The phrase "close proximity" clarifies that hotels may not contribute to nuisance activities "on" or "very near" the hotel property. See Merriam-Webster's Collegiate Dictionary 941 (10th ed.1993) (defining "close" as "being near in time, space, effect, or degree" and "proximate" as "very near"). The provision in question provides no less than nineteen specific examples of the types of conduct to which this provision applies, such as harassment of passersby, gambling, and prostitution. OMC § 8.03.120(A). When read in context and applied to these forms of conduct, the phrase "close proximity" identifies a "sufficiently fixed place" to provide the type of notice and standards required by the Constitution. Grayned v. City of Rockford, 408 U.S. 104, 111, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (approving ordinance forbidding certain activity "adjacent" to school and citing Cox v. Louisiana, 379 U.S. 559, 568, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), for the position that "near" a courthouse is not impermissibly vague as applied).
 
 
 44
 The Association also claims that Ordinance No. 12137, which contemplates criminal penalties, does not contain a mens rea requirement. This omission, argues the Association, conflicts with the Supreme Court's instruction that the absence of a scienter requirement is an important factor in evaluating a vagueness challenge. See Colautti v. Franklin, 439 U.S. 379, 395, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979). The Court, however, has never suggested that the absence of a mens rea requirement, by itself, renders a statute unconstitutional. Nor has the Court gone so far as to indicate that the absence of a scienter requirement trumps Salerno's requirement that the complainant establish that the law is impermissibly vague in all its applications. See Hoffman Estates, 455 U.S. at 497-99, 102 S.Ct. 1186 (recognizing that scienter requirement "may mitigate" a statute's vagueness, but stating that "[t]o succeed ... the complainant must demonstrate that the law is impermissibly vague in all of its applications"); see also Staley v. Jones, 239 F.3d 769, 790-91 (6th Cir.2001) (observing that the Court has not unequivocally stated that a statute without a scienter requirement may be facially invalidated on vagueness grounds without considering whether the statute is invalid in all applications). The Association does not allege that Ordinance No. 12137, which applies the substantive requirements of Ordinance No. 12136 to Deemed Approved hotels, is impermissibly vague in all of its applications. The absence of a scienter requirement does not alter our conclusion that neither ordinance is unconstitutionally vague on its face.
 
 CONCLUSION
 
 45
 In sum, we conclude that the ordinances do not result in an unconstitutional taking of the Association's property under the Fifth Amendment. Nor were the Association's rights to procedural due process and equal protection violated by the enactment of the challenged ordinances. Finally, the Association has failed to demonstrate that the ordinances are unconstitutionally vague on their face. Accordingly, we affirm the district court's judgment.
 
 
 46
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The terms "hotel" and "rooming house" are defined by statuteSee OMC § 8.03.040. A "hotel" is "any public or private space or structure for living therein, including but not limited to any: inn, hostelry, tourist home or house, motel rooming house, mobile home or other living place within the city, offering the right to use such space for sleeping or overnight accommodations...." OMC § 4.24.020. The term "rooming house" is defined by the Oakland Planning Code ("OPC") to include certain buildings accommodating guests on a weekly or longer basis as well as those accommodating "partly on a weekly or longer basis and partly for a shorter time period...." OPC §§ 17.10.690, 17.10.110, 17.10.120.
 
 
 [2]
 Specifically, Chapter 8.03 contains individual subsections covering: management practices, inspection of records and facilities, property security, housekeeping conditions in excess of normal "wear and tear," room furnishings, exterior of property, common areas, and criminal and nuisance activity
 
 
 [3]
 Under California law, "[a] legal nonconforming use is one that existed lawfully before a zoning restriction became effective and that is not in conformity with the ordinance when it continues thereafter."Hansen Bros. Enters., Inc. v. Board of Supervisors, 12 Cal.4th 533, 540 n. 1, 48 Cal.Rptr.2d 778, 907 P.2d 1324 (Cal.1996).
 
 
 [4]
 As we noted inSan Remo Hotel, this ripeness requirement does not apply "where the state does not have a `reasonable, certain, and adequate provision for obtaining compensation' at the time of the taking, in which case the facial takings claim is instantly ripe." 145 F.3d at 1101-02 (quoting Williamson County, 473 U.S. at 194, 105 S.Ct. 3108). But the Association cannot avail itself of this exception as "we have expressly held that, post-1987, California's inverse condemnation procedures are adequate to address a regulatory takings claim." Id. at 1102.
 
 
 [5]
 Section 17.114.40 provides, in relevant part:
 A nonconforming use which is in existence on the effective date of the zoning regulations or of any subsequent rezoning or other amendment thereto which makes such use nonconforming, and which existed lawfully under the previous zoning controls ... may thereafter be continued and maintained indefinitely, and the rights to such use shall run with the land, except as otherwise specified in the nonconforming use regulations.
 
 
 [6]
 Section 17.114.040's guarantees are not absolute. They apply "except as otherwise specified in the nonconforming use regulations."
 
 
 [7]
 The Association does not proceed under the overbreadth doctrine, which "allows a plaintiff to challenge a statute ... because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."Nunez v. City of San Diego, 114 F.3d 935, 949 (9th Cir.1997) (citation and internal quotation marks omitted). It claims only that the ordinances are unconstitutionally vague on their face.
 
 
 [8]
 Although we address theSalerno rule in the context of a facial vague ness challenge, the rule's fate may also have implications for Fifth Amendment takings challenges. See Kittay v. Giuliani, 252 F.3d 645, 647 (2d Cir.2001) (applying Salerno to facial takings challenge); Gulf Power Co. v. United States, 187 F.3d 1324, 1336 (11th Cir.1999) (same). Our cases generally have not applied Salerno to facial takings challenges, and because we uphold dismissal of the Association's takings claim on other grounds, see supra Part II, we need not resolve here the precise contours of the rule's application in that context.