**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SPRINT TELEPHONY PCS, L.P., a
Delaware limited partnership,
            *Plaintiff-Appellant/*
                *Cross-Appellee,*

            and

PACIFIC BELL WIRELESS LLC, a
Nevada limited liability company,
dba Cingular Wireless,
                        *Plaintiff,*

            v.

COUNTY OF SAN DIEGO, a division
of the State of California; GREG
COX, in his capacity as a
supervisor of the County of San
Diego; DIANNE JACOB, in her
capacity as a supervisor of the
County of San Diego; PAM
SLATER, in her capacity as a
supervisor of the County of San
Diego; RON ROBERTS, in his
capacity as a supervisor of the
County of San Diego; BILL HORN,
in his capacity as a supervisor of
the County of San Diego,
            *Defendants-Appellees/*
                *Cross-Appellants.*

Nos. 05-56076
        05-56435

D.C. No.
CV-03-1398-BTM

OPINION

Appeals from the United States District Court
for the Southern District of California
Barry Ted Moskowitz, District Judge, Presiding

12699

Argued and Submitted
June 24, 2008—Pasadena, California

Filed September 11, 2008

Before: Alex Kozinski, Chief Judge, and
Andrew J. Kleinfeld, Michael Daly Hawkins,
A. Wallace Tashima, Sidney R. Thomas, Barry G. Silverman,
Susan P. Graber, Ronald M. Gould, Marsha S. Berzon,
Richard C. Tallman, and Jay S. Bybee, Circuit Judges.

Opinion by Judge Graber;
Concurrence by Judge Gould

**COUNSEL**

Daniel T. Pascucci and Nathan R. Hamler, Mintz Levin Cohn Ferris Glovsky and Popeo PC, San Diego, California, for the plaintiff-appellant/cross-appellee.

Thomas D. Bunton, Senior Deputy County Counsel, County of San Diego, San Diego, California, for the defendants-appellees-cross-appellants.

Andrew G. McBride and Joshua S. Turner, Wiley Rein LLP, Washington, D.C.; William K. Sanders, Deputy City Attorney, San Francisco, California; Joseph Van Eaton, Miller & Van Eaton, P.L.L.C., Washington, D.C.; John J. Flynn III, Nossaman, Guthner, Knox & Elliott, LLP, Irvine, California; T. Scott Thompson, Davis Wright Tremaine, LLP, Washington, D.C.; and Elaine Duncan and Jesus G. Roman, Verizon California, Inc., Thousand Oaks, California, for amici curiae.

**OPINION**

GRABER, Circuit Judge:

The Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified as amended in U.S.C. Titles 15, 18 & 47) ("the Act"), precludes state and local governments from enacting ordinances that prohibit or have the effect of prohibiting the provision of telecommunications services, including wireless services. In 2003, Defendant County of San Diego enacted its Wireless Telecommunications Facilities ordinance. San Diego County Ordinance No. 9549, § 1 (codified as San Diego County Zoning Ord. §§ 6980-6991, 7352 ("the Ordi-

nance")). The Ordinance imposes restrictions and permit requirements on the construction and location of wireless telecommunications facilities. Plaintiff Sprint Telephony PCS alleges that, on its face, the Ordinance prohibits or has the effect of prohibiting the provision of wireless telecommunications services, in violation of the Act. The district court permanently enjoined the County from enforcing the Ordinance, and a three-judge panel of this court affirmed. *Sprint Telephony PCS, L.P. v. County of San Diego*, 490 F.3d 700 (9th Cir. 2007). We granted rehearing en banc, 527 F.3d 791 (9th Cir. 2008), and we now reverse.

## FACTUAL AND PROCEDURAL HISTORY

The County of San Diego enacted the Ordinance "to establish comprehensive guidelines for the placement, design and processing of wireless telecommunications facilities in all zones within the County of San Diego." San Diego County Ordinance No. 9549, § 1. The Ordinance categorizes applications for wireless telecommunications facilities into four tiers, depending primarily on the visibility and location of the proposed facility. San Diego County Zoning Ordinance § 6985. For example, an application for a low-visibility structure in an industrial zone generally must meet lesser requirements than an application for a large tower in a residential zone. *Id.*

Regardless of tier, the Ordinance imposes substantive and procedural requirements on applications for wireless facilities. For example, non-camouflaged poles are prohibited in residential and rural zones; certain height and setback restrictions apply in residential zones; and no more than three facilities are allowed on any site, unless "a finding is made that co-location of more facilities is consistent with community character." *Id.* An applicant is required to identify the proposed facility's geographic service area, to submit a "visual impact analysis," and to describe various technical attributes such as height, maintenance requirements, and acoustical information, although some exceptions apply. *Id.* § 6984. The proposed

facility must be located within specified "preferred zones" or "preferred locations," unless those locations are "not technologically or legally feasible" or "a finding is made that the proposed site is preferable due to aesthetic and community character compatibility." *Id.* § 6986. The proposed facility also must meet many design requirements, primarily related to aesthetics. *Id.* § 6987. The applicant also must perform regular maintenance of the facility, including graffiti removal and proper landscaping. *Id.* § 6988.

General zoning requirements also apply. For example, hearings are conducted before a permit is granted, *id.* § 7356, and on appeal, if requested, *id.* § 7366(h). Before a permit is granted, the zoning board must find:

> That the location, size, design, and operating characteristics of the proposed use will be compatible with adjacent uses, residents, buildings, or structures, with consideration given to:
>
> 1.  Harmony in scale, bulk, coverage and density;
>
> 2.  The availability of public facilities, services and utilities;
>
> 3.  The harmful effect, if any, upon desirable neighborhood character;
>
> 4.  The generation of traffic and the capacity and physical character of surrounding streets;
>
> 5.  The suitability of the site for the type and intensity of use or development which is proposed; and to
>
> 6.  Any other relevant impact of the proposed use[.]

*Id.* § 7358(a). The decision-maker retains discretionary authority to deny a use permit application or to grant the application conditionally. *Id.* § 7362.

Soon after the County enacted the Ordinance, Sprint brought this action, alleging that the Ordinance violates 47 U.S.C. § 253(a)[1] because, on its face, it prohibits or has the effect of prohibiting Sprint's ability to provide wireless telecommunications services. Sprint sought injunctive and declaratory relief under the Supremacy Clause and 28 U.S.C. § 1331, and damages and attorney fees under 42 U.S.C. § 1983. The County argued that § 253(a) did not apply to the Ordinance, because 47 U.S.C. § 332(c)(7) exclusively governs wireless regulations, and that, in any event, the Ordinance is not an effective prohibition on the provision of wireless services. The County also argued that damages and attorney fees are unavailable because Congress did not create a private right of action enforceable under 42 U.S.C. § 1983.

The district court first held that facial challenges to a local government's wireless regulations could be brought under either § 253(a) or § 332(c)(7), because neither is exclusive. The district court next held, relying on our decision in *City of Auburn v. Qwest Corp.*, 260 F.3d 1160 (9th Cir. 2001), that the Ordinance violated § 253(a). The district court therefore permanently enjoined the County from enforcing the Ordinance against Sprint. Finally, the district court held that a claim under 42 U.S.C. § 1983 for a violation of § 253(a) was not cognizable and granted summary judgment to the County on that claim. The parties cross-appealed. A three-judge panel of this court affirmed, and we granted rehearing en banc.

---

[1]In its complaint, Sprint also alleged that the Ordinance violated another subsection of 47 U.S.C. § 253. The district court dismissed that cause of action for failure to prosecute, and Sprint does not challenge that dismissal on appeal.

## STANDARDS OF REVIEW

We review for abuse of discretion the district court's grant of a permanent injunction, but review its underlying determinations "by the standard that applies to that determination." *Ting v. AT&T*, 319 F.3d 1126, 1134-35 (9th Cir. 2003).

## DISCUSSION

Sprint argues that, on its face, the Ordinance prohibits or has the effect of prohibiting the provision of wireless telecommunications services, in violation of the Act. As a threshold issue, the parties dispute *which* provision of the Act—47 U.S.C. § 253(a) or 47 U.S.C. § 332(c)(7)(B)(i)(II)—applies to this case.

A.  *The Effective Prohibition Clauses of 47 U.S.C. § 253(a) and 47 U.S.C. § 332(c)(7)(B)(i)(II)*

When Congress passed the Act, it expressed its intent "to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." 110 Stat. at 56; *see also Ting*, 319 F.3d at 1143 ("[T]he purpose of the . . . Act is to 'provide for a pro-competitive, deregulatory national policy framework . . . by opening all telecommunications markets to competition.' " (quoting H.R. Rep. No. 104-458, at 113 (1996) (Conf. Rep.), *reprinted in* 1996 U.S.C.C.A.N. 124, 124)). The Act "represents a dramatic shift in the nature of telecommunications regulation." *Cablevision of Boston, Inc. v. Pub. Improvement Comm'n*, 184 F.3d 88, 97 (1st Cir. 1999); *see also Ting*, 319 F.3d at 1143 (characterizing the Act as a "dramatic break with the past"). Congress chose to "end[ ] the States' longstanding practice of granting and maintaining local exchange monopolies." *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 405 (1999) (Thomas, J., concurring in part, dissenting in part).

**[1]** Congress did so by enacting 47 U.S.C. § 253, a new statutory section that preempts state and local regulations that maintain the monopoly status of a telecommunications service provider. *See Cablevision of Boston*, 184 F.3d at 98 ("Congress apparently feared that some states and municipalities might prefer to maintain the monopoly status of certain providers . . . . Section 253(a) takes that choice away from them. . . ."). Section 253(a) states: "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."

The Act also contained new provisions applicable only to *wireless* telecommunications service providers. The House originally proposed legislation requiring the Federal Communications Commission ("FCC") to regulate directly the placement of wireless telecommunications facilities. *See* H.R. Rep. No. 104-204(I), § 107, at 94 (1995), *reprinted in* 1996 U.S.C.C.A.N. 10, 61. But the House and Senate conferees decided instead to "preserve[ ] the authority of State and local governments over zoning and land use matters except in the limited circumstances set forth in the conference agreement." H.R. Rep. No. 104-458, § 704, at 207-08 (1996) (Conf. Rep.), *reprinted in* 1996 U.S.C.C.A.N. 124, 222.

**[2]** Accordingly, at the same time, Congress also enacted 47 U.S.C. § 332(c)(7). Section 332(c)(7)(A) preserves the authority of local governments over zoning decisions regarding the placement and construction of wireless service facilities, subject to enumerated limitations in § 332(c)(7)(B). One such limitation is that local regulations "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." *Id.* § 332(c)(7)(B)(i)(II).

We have interpreted § 332(c)(7)(B)(i)(II) in accordance with its text. In *MetroPCS, Inc. v. City of San Francisco*, 400 F.3d 715, 730-31 (9th Cir. 2005), we held that a locality runs

afoul of that provision if (1) it imposes a "city-wide general ban on wireless services" or (2) it actually imposes restrictions that amount to an effective prohibition.

[3] Our interpretation of § 253(a), however, has not hewn as closely to its nearly identical text. Again, § 253(a) states: "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." In *Auburn*, we became one of the first federal circuit courts to interpret that provision. We surveyed district court decisions and adopted their broad interpretation of its preemptive effect. *Auburn*, 260 F.3d at 1175-76. In the course of doing so, we quoted § 253(a) somewhat inaccurately, inserting an ellipsis in the text of § 253(a). *Id.* at 1175. We held that "[s]ection 253(a) preempts 'regulations that not only "prohibit" outright the ability of any entity to provide telecommunications services, but also those that "may . . . have the effect of prohibiting" the provision of such services.' " *Id.* (quoting *Bell Atl.-Md., Inc. v. Prince George's County*, 49 F. Supp. 2d 805, 814 (D. Md. 1999), *vacated and remanded on other grounds*, 212 F.3d 863 (4th Cir. 2000)); *see also Qwest Commc'ns Inc. v. City of Berkeley*, 433 F.3d 1253, 1258 (9th Cir. 2006) (invalidating the locality's regulations because they "may have the effect of prohibiting telecommunications companies from providing services"); *Qwest Corp. v. City of Portland*, 385 F.3d 1236, 1241 (9th Cir. 2004) (emphasizing that "regulations that *may* have the effect of prohibiting the provision of telecommunications services are preempted [by § 253(a)]"). It followed from that truncated version of the statute that, if a local regulation merely "create[s] a substantial . . . barrier" to the provision of services or "allows a city to bar" provision of services, *Auburn*, 260 F.3d at 1176, then § 253(a) preempts the regulation. Applying that broad standard, we held that the municipal regulations at issue in *Auburn* were preempted because they imposed procedural requirements, charged fees, authorized civil and criminal penalties, and—"the ultimate cudgel"—reserved discretion to the

city to grant, deny, or revoke the telecommunications franchises. *Id.*

Our expansive reading of the preemptive effect of § 253(a) has had far-reaching consequences. The *Auburn* standard has led us to invalidate several local regulations. *See Berkeley*, 433 F.3d at 1258 (holding that Berkeley's regulations were preempted by § 253(a)); *Portland*, 385 F.3d at 1239-42 (reversing the district court's holding that Portland's regulations survived preemption and remanding for additional analysis). Three of our sister circuits also have followed our broad interpretation of § 253(a), albeit with little discussion. *See P.R. Tel. Co. v. Municipality of Guayanilla*, 450 F.3d 9, 18 (1st Cir. 2006) (citing *Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258, 1269 (10th Cir. 2004)); *Santa Fe*, 380 F.3d at 1270 (quoting *Auburn*, 260 F.3d at 1176); *TCG N.Y., Inc. v. City of White Plains*, 305 F.3d 67, 76 (2d Cir. 2002). Applying our *Auburn* standard, federal district courts have invalidated local regulations in tens of cases across this nation's towns and cities. *See, e.g.*, *NextG Networks of Cal., Inc. v. County of Los Angeles*, 522 F. Supp. 2d 1240, 1253 (C.D. Cal. 2007); *TC Sys., Inc. v. Town of Colonie*, 263 F. Supp. 2d 471, 481-84 (N.D.N.Y. 2003); *XO Mo., Inc. v. City of Maryland Heights*, 256 F. Supp. 2d 987, 996-98 (E.D. Mo. 2003).

But the tension between the *Auburn* standard and the full text of § 253(a) has not gone unnoticed. *See City of Portland v. Elec. Lightwave, Inc.*, 452 F. Supp. 2d 1049, 1059 (D. Or. 2005) ("The Ninth Circuit's interpretation of the scope of section 253(a) appears to depart from the plain meaning of the statute . . . ."); *Qwest Corp. v. City of Portland*, 200 F. Supp. 2d 1250, 1255 (D. Or. 2002) (construing the *Auburn* standard as dictum because reading § 253(a) as preempting regulations that *may* have the effect of prohibiting telecommunications services "simply misreads the plain wording of the statute"), *rev'd by Portland*, 385 F.3d at 1241 ("Like it or not, both we and the district court are bound by our prior ruling [in *Auburn*]."); *see also Newpath Networks LLC v. City of Irvine*,

No. SACV-06-550, 2008 WL 2199689, at *4 (C.D. Cal. Mar. 10, 2008) (noting that "the Court is sympathetic to Irvine's argument that judicial decisions in this area have not been particularly instructive in telling municipalities how they may regulate in accordance with the . . . Act"). Recently, the Eighth Circuit rejected the *Auburn* standard and held that, to demonstrate preemption, a plaintiff "must show actual or effective prohibition, rather than the mere possibility of prohibition." *Level 3 Commc'ns, L.L.C. v. City of St. Louis*, 477 F.3d 528, 532-33 (8th Cir. 2007); *see also AT&T Commc'ns of Pac. Nw., Inc. v. City of Eugene*, 35 P.3d 1029, 1047-48 (Or. Ct. App. 2001) (implicitly rejecting the *Auburn* standard).

**[4]** We find persuasive the Eighth Circuit's and district courts' critique of *Auburn*. Section 253(a) provides that "[n]o State or local statute or regulation . . . may prohibit or have the effect of prohibiting. . . provi[sion of] . . . telecommunications service." In context, it is clear that Congress' use of the word "may" works in tandem with the negative modifier "[n]o" to convey the meaning that "state and local regulations shall not prohibit or have the effect of prohibiting telecommunications service." Our previous interpretation of the word "may" as meaning "might possibly" is incorrect. We therefore overrule *Auburn* and join the Eighth Circuit in holding that "a plaintiff suing a municipality under section 253(a) must show actual or effective prohibition, rather than the mere possibility of prohibition." *Level 3 Commc'ns*, 477 F.3d at 532.

Although our conclusion rests on the unambiguous text of § 253(a), we note that our interpretation is consistent with the FCC's. *See In re Cal. Payphone Ass'n*, 12 F.C.C.R. 14191, 14209 (1997) (holding that, to be preempted by § 253(a), a regulation "would have to actually prohibit or effectively prohibit" the provision of services); *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) (holding that the two-step *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), analysis applies to

FCC rulings). Were the statute ambiguous, we would defer to the FCC under *Chevron*, as its interpretation is certainly reasonable. 467 U.S. at 843. Our narrow interpretation of the preemptive effect of § 253(a) also is consistent with the presumption that "express preemption statutory provisions should be given a narrow interpretation." *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 496 (9th Cir. 2005).

Our present interpretation of § 253(a) is buttressed by our interpretation of the same relevant text in § 332(c)(7)(B)(i)(II) —"prohibit or have the effect of prohibiting." In *MetroPCS*, to construe § 332(c)(7)(B)(i)(II), we focused on the *actual* effects of the city's ordinance, not on what effects the ordinance *might possibly* allow. 400 F.3d at 732-34. Indeed, we rejected the plaintiff's argument that, because the city's zoning ordinance granted discretion to the city to reject an application based on vague standards such as "necessity," the ordinance necessarily constituted an effective prohibition. *Id.* at 724, 732. Consequently, our interpretation of the "effective prohibition" clause of § 332(c)(7)(B)(i)(II) differed markedly from *Auburn*'s interpretation of the same relevant text in § 253(a). *Compare MetroPCS*, 400 F.3d at 731-35 (analyzing, under § 332(c)(7)(B)(i)(II), whether the city's ordinance and decision *actually* have the effect of prohibiting the provision of wireless services), *with Portland*, 385 F.3d at 1241 ("[R]egulations that *may* have the effect of prohibiting the provision of telecommunications services are preempted [by § 253(a)]."); *compare also MetroPCS*, 400 F.3d at 732 (rejecting the argument that "the City's zoning 'criteria,' which allow for [permit] denials based on findings that a given facility is 'not necessary' for the community, are 'impossible for any non-incumbent carrier to meet' and thus constitute an effective prohibition of wireless services"), *with Auburn*, 260 F.3d at 1176 (holding that the city's ordinance is an effective prohibition under § 253(a), in large part because the "city reserves discretion to grant, deny, or revoke the [telecommunications] franchises").

When Congress uses the same text in the same statute, we presume that it intended the same meaning. *See N. Sports, Inc. v. Knupfer (In re Wind N' Wave)*, 509 F.3d 938, 945 (9th Cir. 2007) (applying the presumption); *Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991) ("We must presume that words used more than once in the same statute have the same meaning."); *see also Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion) ("[W]e begin with the premise that when Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."); *id.* at 261 (O'Connor, J., concurring in the judgment) (stating that the presumption should apply in the absence of "strong evidence" to the contrary). We see nothing suggesting that Congress intended a different meaning of the text "prohibit or have the effect of prohibiting" in the two statutory provisions, enacted at the same time, in the same statute.

**[5]** Our holding today therefore harmonizes our interpretations of the identical relevant text in §§ 253(a) and 332(c)(7)(B)(i)(II).[2] Under both, a plaintiff must establish either an outright prohibition or an effective prohibition on the provision of telecommunications services; a plaintiff's showing that a locality could *potentially* prohibit the provision of telecommunications services is insufficient.

Because Sprint's suit hinges on the statutory text that we interpreted above—"prohibit or have the effect of prohibiting"—we need not decide whether Sprint's suit falls under § 253 or § 332. As we now hold, the legal standard is the same under either.

---

[2]We make no comment on what differences, if any, exist between the two statutory sections in other contexts.

B.   *The Effective Prohibition Standard Applied to the County of San Diego's Ordinance*

[6] Having established the proper legal standard, we turn to Sprint's facial challenge to the Ordinance. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).[3]

The Ordinance plainly is not an outright ban on wireless facilities. We thus consider whether the Ordinance effectively prohibits the provision of wireless facilities. We have no difficulty concluding that it does not.

The Ordinance imposes a layer of requirements for wireless facilities in addition to the zoning requirements for other structures. On the face of the Ordinance, none of the requirements, individually or in combination, prohibits the construction of sufficient facilities to provide wireless services to the County of San Diego.

[7] Most of Sprint's arguments focus on the discretion reserved to the zoning board. For instance, Sprint complains that the zoning board must consider a number of "malleable and open-ended concepts" such as community character and

---

[3]The Supreme Court and this court have called into question the continuing validity of the *Salerno* rule in the context of First Amendment challenges. *See, e.g.*, *Wash. State Grange v. Wash. State Republican Party*, 128 S. Ct. 1184, 1190 (2008); *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 971-72 (9th Cir. 2003). In cases involving federal preemption of a local statute, however, the rule applies with full force. *See Hotel & Motel Ass'n*, 344 F.3d at 971 ("To bring a successful facial challenge outside the context of the First Amendment, 'the challenger must establish that no set of circumstances exists under which the [statute] would be valid.' " (alteration in original) (quoting *Salerno*, 481 U.S. at 745)); *see also Anderson v. Edwards*, 514 U.S. 143, 155 n.6 (1995) (unanimous opinion) (applying *Salerno* to a federal preemption facial challenge to a state statute).

aesthetics; it may deny or modify applications for "any other relevant impact of the proposed use"; and it may impose almost any condition that it deems appropriate. A certain level of discretion is involved in evaluating any application for a zoning permit. It is certainly true that a zoning board *could* exercise its discretion to effectively prohibit the provision of wireless services, but it is equally true (and more likely) that a zoning board would exercise its discretion only to balance the competing goals of an ordinance—the provision of wireless services and other valid public goals such as safety and aesthetics. In any event, Sprint cannot meet its high burden of proving that "no set of circumstances exists under which the [Ordinance] would be valid," *Salerno*, 481 U.S. at 745, simply because the zoning board exercises some discretion.

[8] The same reasoning applies to Sprint's complaint that the Ordinance imposes detailed application requirements and requires public hearings. Although a zoning board could conceivably use these procedural requirements to stall applications and thus effectively prohibit the provision of wireless services, the zoning board equally could use these tools to evaluate fully and promptly the merits of an application. Sprint has pointed to no requirement that, on its face, demonstrates that Sprint is effectively prohibited from providing wireless services. For example, the Ordinance does not impose an excessively long waiting period that would amount to an effective prohibition. Moreover, if a telecommunications provider believes that the zoning board is in fact using its procedural rules to delay unreasonably an application, or its discretionary authority to deny an application unjustifiably, the Act provides an expedited judicial review process in federal or state court. *See* 47 U.S.C. § 332(c)(7)(B)(ii) & (v).

[9] We are equally unpersuaded by Sprint's challenges to the substantive requirements of the Ordinance. Sprint has not identified a single requirement that effectively prohibits it from providing wireless services. On the face of the Ordinance, requiring a certain amount of camouflage, modest set-

backs, and maintenance of the facility are reasonable and responsible conditions for the construction of wireless facilities, not an effective prohibition.

That is not to say, of course, that a plaintiff could never succeed in a facial challenge. If an ordinance required, for instance, that all facilities be underground and the plaintiff introduced evidence that, to operate, wireless facilities must be above ground, the ordinance would effectively prohibit it from providing services. Or, if an ordinance mandated that no wireless facilities be located within one mile of a road, a plaintiff could show that, because of the number and location of roads, the rule constituted an effective prohibition. We have held previously that rules effecting a "significant gap" in service coverage could amount to an effective prohibition, *MetroPCS*, 400 F.3d at 731-35, and we have no reason to question that holding today.

**[10]** In conclusion, the Ordinance does not effectively prohibit Sprint from providing wireless services. Therefore, the Act does not preempt the County's wireless telecommunications ordinance.

C.   *Section 1983 claim*

**[11]** We adopt the reasoning and conclusion of the three-judge panel that 42 U.S.C. § 1983 claims cannot be brought for violations of 47 U.S.C. § 253. *Sprint Telephony*, 490 F.3d at 716-18; *accord Santa Fe*, 380 F.3d at 1266-67; *see also Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 812-15 (9th Cir. 2007) (holding that § 1983 claims cannot be brought for violations of 47 U.S.C. § 332).

AFFIRMED with respect to the § 1983 claim; otherwise REVERSED. Costs on appeal awarded to Defendants - Appellees/Cross-Appellants.

GOULD, Circuit Judge, concurring:

I concur in full in Judge Graber's majority opinion, holding that Section 253(a) preempts any state or local law that actually or effectively prohibits provision of telecommunication services. I write separately to add my view that normally local governments will have the ability to enforce reasonable zoning ordinances that might affect where and how a cellular tower is located, but that will not effectively prohibit cellular telephone service. Zoning ordinances, in my view, will be preempted only if they would substantially interfere with the ability of the carrier to provide such services. Cases of a preempted zoning ordinance will doubtless be few and far between, and the record in this case shows that telecommunication services here were not effectively barred by the zoning ordinance.