**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SPRINT TELEPHONY PCS, L.P., a
Delaware limited partnership,
   *Plaintiff-Appellant-*
    *Cross-Appellee,*

  and

PACIFIC BELL WIRELESS LLC, a
Nevada limited liability company,
dba Cingular Wireless,
     *Plaintiff,*

   v.

COUNTY OF SAN DIEGO; GREG COX,
in his capacity as supervisor of the
County of San Diego; DIANNE
JACOB, in her capacity as
supervisor of the County of San
Diego; PAM SLATER, in her
capacity as supervisor of the
County of San Diego; RON
ROBERTS, in his capacity as
supervisor of the County of San
Diego; BILL HORN, in his capacity
as supervisor of the County of San
Diego,
   *Defendants-Appellees-*
    *Cross-Appellants.*

Nos. 05-56076
   05-56435

D.C. No.
CV-03-1398-BTM

ORDER AND
AMENDED
OPINION

Appeals from the United States District Court
for the Southern District of California
Barry Ted Moskowitz, District Judge, Presiding

Argued and Submitted
October 26, 2006—Pasadena, California

7163

Filed March 13, 2007
Amended June 13, 2007

Before: Myron H. Bright,* A. Wallace Tashima, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bright

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

**COUNSEL**

Daniel T. Pascucci, Andrew D. Skale, and Nathan R. Hamler, Buchanan Ingersoll LLP, San Diego, California, for the plaintiff-appellant-cross-appellee.

Thomas D. Bunton and John Sansome, County of San Diego Office of County Counsel, San Diego, California, for the defendants-appellees-cross-appellants.

Dennis J. Herrera, San Francisco City Attorney, Theresa L. Mueller, Chief Energy & Telecommunications Deputy, Danny Y. Chou, Chief Appellate Deputy, and William K. Sanders, Deputy City Attorney, San Francisco, California, for *amici curiae* National League of Cities, et al.

Edward L. Donohue, Donohue & Blu PLC, Alexandria, Virginia, for *amici curiae* T Mobile USA, Inc. and PCIA.

**ORDER**

The unopposed motion of the National League of Cities and eight other organizations for leave to file an *Amici Curiae*

brief is granted, and their *amici* brief in support of the petition for panel rehearing and rehearing *en banc*, received by the Clerk on April 12, 2007, concurrently with the filing of the motion, is ordered filed. The motion of appellee County of San Diego for leave to file reply in support of its petition for rehearing and rehearing *en banc* is denied.

The opinion filed March 13, 2007, and reported at 479 F.3d 1061, is hereby amended. The attached amended opinion is filed concurrently with this order.

With the filing of the amended opinion, the petition for panel rehearing is denied. No further petitions for panel rehearing will be entertained. The full court was advised of the petition for rehearing en banc and no judge of the court has requested a vote on en banc rehearing. *See* Fed. R. App. P. 35(f). The petition for rehearing en banc is denied, without prejudice to a petition for rehearing en banc as to the amended opinion.

---

## OPINION

BRIGHT, Circuit Judge:

Sprint Telephony PCS sought an injunction in the district court to prevent San Diego County ("the County") from enforcing its Wireless Telecommunications Facilities zoning ordinance ("WTO"). The district court granted a permanent injunction, agreeing with Sprint that the WTO's regulation of wireless facility placement violated § 253(a) of the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996) (codified as amended in scattered sections of U.S.C. Titles 15, 18, & 47) ("TCA"). But, the court held that § 253(a) did not create a private right of action and thus denied Sprint's 28 U.S.C. § 1983 claim for money damages and attorney's fees. *See Sprint Telephony PCS, L.P. v. County of*

*San Diego*, 377 F. Supp. 2d 886 (S.D. Cal. 2005). Sprint appeals the denial of its § 1983 claim, and the County cross-appeals seeking reversal of the order granting the permanent injunction. We conclude that the burdens imposed by the WTO were sufficient to sustain a facial challenge under § 253(a) and that Congress did not intend to permit enforcement of § 253(a) through a § 1983 damages action. We accordingly affirm the district court.

## I.

Today's wireless age began when Guglielmo Marconi developed a way for ships to communicate over radio waves in 1895. *See* PETER W. HUBER ET AL., FEDERAL TELECOMMUNICATIONS LAW 10, 861 (2d ed. 1999) (hereinafter "Huber"). Mobile technology in the United States initially relied on single-cell transmission, which severely limited the number of subscribers who could utilize the system. It was not until December 1947 that Bell Labs scientist D.H. Ring conceptualized cellular telecommunications in an internal technical memorandum. *See 1946: First Mobile Telephone Call*, *available at* http://www.corp.att.com/attlabs/reputation/timeline/46mobile.html (last visited Mar. 5, 2007). Ring's system employed multiple transmission sites and re-used frequencies, overcoming the limitations of the single-cell transmission system that was constrained by the number of channels available within the radio spectrum first allocated to mobile communications by the Federal Communications Commission ("FCC") in 1949. *See* Huber at 862 (citing General Mobile Radio Service, *Report and Order of the Commission*, 13 F.C.C. 1190 (1949)). Ring's concept did not, however, replace the single-cell model until the 1980s. *See* HUBER at 864. Before cellular technology took hold, the radio spectrum dedicated to mobile communications supported only 140,000 subscribers. *Id.*

### A.    The Development of Cellular Technology

Nationwide wireless capacity grew as providers adopted cellular technology and as the FCC gradually expanded the

radio spectrum available to mobile telecommunications. *See id.* at 903-08; *see also* FCC, *Cellular Services: Band Plan*, *available at* http://wireless.fcc.gov/services/index.htm?job=service_bandplan&id=cellular (last visited Mar. 5, 2007). In June 1985, when the Cellular Telecommunication Industry Association ("CTIA") began its semi-annual survey of the industry, the CTIA reported 203,600 domestic cellular subscribers. *See* CTIA, *Background on CTIA's Semi-Annual Wireless Industry Survey*, *available at* http://files.ctia.org/pdf/CTIAMidYear2006Survey.pdf (last visited Mar. 5, 2007) ("CTIA Survey"). By June 2006, as we prepared to hear this appeal, that number had grown to 219,420,457. *Id.*

The corresponding infrastructure necessary to support today's cellular technology is extensive. Cellular telecommunications takes its name from the network of hexagonal cells, which "resemble honeycombs," blanketing the coverage area. *See* Jeffrey Berger, *Efficient Wireless Tower Sitting: An Alternative to Section 332(c)(7) of the Telecommunications Act of 1996*, 23 Temp. Envtl. L. & Tech. J. 83, 87 (2004). Each cell contains an antenna tower, which emits and receives signals to and from the subscribers within its geographic area. *Id.* As Ring originally proposed, users are seamlessly passed from tower to tower as they move within the system. *Id.* Approximately 200,000 cellular sites currently support more than 200 million subscribers nationwide. *See CTIA Survey*.

The growing demand for cellular service requires the construction of additional cellular sites, which has met with opposition in some communities. *See* Berger at 86 (describing the opposition to cellular towers). Congress addressed growing concern that the lack of a national wireless policy inhibited growth of the industry in provisions of the Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, § 6001-03, 107 Stat. 312 (1993). The provisions, in addition to expanding the radio spectrum available to wireless carriers, amended section 332 of the Communications Act of 1934, 47 U.S.C. § 332, to address the "regulatory treatment of mobile ser-

vices." *See* § 6002, 107 Stat. at 392-95 (codified at 47 U.S.C. § 332(c) (1988 & Supp. V 1993)).

## B.   The Telecommunications Act of 1996

Congress reaffirmed its commitment to nationwide telecommunications and cellular service when it passed the TCA in 1996. It announced its intent "to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." 110 Stat. at 56 (1996). The TCA, which also amended the Communications Act of 1934, in part added a section expressly preempting state and local regulations that have the effect of prohibiting any telecommunications service:

> § 253 Removal of Barriers to Entry
>
>> (a)   In general
>>
>> No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.
>>
>> (b)   State regulatory authority
>>
>> Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this title, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of

telecommunications services, and safeguard the rights of consumers.

(c) State and local government authority

Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

(d) Preemption

If, after notice and an opportunity for public comment, the Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency.

(e) Commercial mobile service providers

Nothing in this section shall affect the application of section 332(c)(3) of this title to commercial mobile service providers.

§ 101, 110 Stat. at 70-71 (codified at 47 U.S.C. § 253(a)-(e) (1994 & Supp. II 1996)) (hereinafter "removing barriers"). Congress, by preempting state and local statutes, "ended the

States' longstanding practice of granting and maintaining local exchange monopolies." *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 405 (1999) (Thomas, J., concurring in part, dissenting in part); *see also Cablevision of Boston, Inc. v. Pub. Improvement Comm'n of Boston*, 184 F.3d 88, 97-98 (1st Cir. 1999) (explaining that § 253 implements Congress's "free market vision" by preventing states and localities from maintaining the "monopoly status of certain providers, on the belief that a single regulated provider would provide better or more universal service," *id.* at 98).

In addition to § 253(a), which protects all common carriers, the TCA amended the code provisions applicable to only mobile services. *See* 47 U.S.C. § 332(c) (1994 & Supp. II 1996). Prior to passage of the TCA, § 332 included, among other provisions, the factors the FCC must consider as it manages the electromagnetic spectrum assigned to private mobile services. *See id.* § 332(a) (1994). Section 332 also required commercial mobile service providers to be treated as common carriers (subject to limited exceptions that the FCC may establish). *See id.* § 332(c) (1994). The TCA, though, added subsection (c)(7), which expressly preserves the authority of local governments to make decisions, subject to certain limitations, regarding the placement of wireless service facilities:

(7)    Preservation of local zoning authority

(A)    General authority

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B)    Limitations

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof —

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

(v)   Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

§ 704, 110 Stat. at 151-52 (codified at 42 U.S.C. § 332(c)(7) (1994 & Supp. II 1996)) (hereinafter "preserving local zoning authority").

The addition of § 332(c)(7) represented a conscious choice by the House and Senate conferees to maintain limited state and local control over the placement of wireless facilities. *See Omnipoint Corp. v. Zoning Hearing Bd.*, 181 F.3d 403, 406-07 (3d Cir. 1999); *Town of Amherst v. Omnipoint Communications Enters., Inc.*, 173 F.3d 9, 13 (1st Cir. 1999). The House, concerned that "siting and zoning decisions by nonfederal units of government[ ] have created an inconsistent and, at times, conflicting patchwork of requirements which will inhibit the deployment of Personal Communications Services as well as the rebuilding of a digital technology-based cellular telecommunications network," would have required the FCC to regulate directly the placement of wireless facilities. H.R. Rep. No. 104-204(I), at 94 (1995), *reprinted in* 1996 U.S.C.C.A.N. 10, 61. The conferees, however, created § 332(c)(7) in an effort to "prevent[ ] Commission preemption of local and State land use decisions and preserve[ ] the authority of State and local governments over zoning and land use matters except in the limited circumstances set forth in the

conference agreement." H.R. Conf. Rep. No. 104-458, at 207-08 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124, 222.

## C. The County's Enactment of the Wireless Telecommunications Facilities Ordinance

Against the backdrop of the TCA, the County, in April 2003, enacted Ordinance Number 9549, "An Ordinance Amending the San Diego Zoning Ordinance Relating to Wireless Telecommunications Facilities." The WTO supplements the County's general zoning ordinance (hereinafter "Zoning Ordinance") and creates a four-tier system for the granting of wireless facility permits. According to the WTO a provider, such as Sprint, must obtain one of four conditional use permits before constructing a wireless facility: (1) Administrative Site Plan Permit; (2) Site Plan with Community Review Permit; (3) Minor Use Permit; or (4) Major Use Permit. WTO § 6985. Each class of permit defines the wireless facility projects that fall within its scope, based on factors including the placement, visibility, and height of the proposed structure. *Id.*

We briefly summarize the permit application requirements of the WTO. A permit applicant must: (1) identify the geographic area served by the site, list all of the applicant's other sites in the area, and describe why the site is necessary to the applicant's network; (2) submit a "visual impact analysis" that describes the "maximum silhouette, viewshed analysis, color and finish palette and proposed screening," and includes simulated photographs of the site; and (3) create a narrative detailing the site's height, maintenance, noise emissions, alternative placement in a preferred site (if the site does not fall within one of the geographic areas preferred by the County for wireless facilities), landscaping plan, fire service plan, hazardous materials use, maintenance personnel parking plan (if the site is located in a public right of way), "a letter stating the applicant's willingness to allow other carriers to co-locate on their facilities whenever technically and economically feasible and aesthetically desirable," and the "lease area

of the proposed facility on the plot plan." *See* WTO §§ 6984, 6986(B). The WTO also discusses the general and design regulations applicable to wireless facilities, so that an applicant may design a compliant facility. *See* WTO §§ 6985(C), 6987.

In addition to the provisions of the WTO, wireless providers that apply for use permits are subject to other requirements contained in the Zoning Ordinance. The Zoning Ordinance requires applicants to submit: (1) a list of "all persons having a interest in the application as well as the names of all persons having any ownership interest in the property involved;" (2) complete plans for the site; and (3) an "appropriate environmental impact review document." *See* Zoning Ordinance § 7345(b).

Following submission of an application, the review process, established by the Zoning Ordinance and the provisions added by the WTO, reserves to the County's permitting authority significant discretion. Before a use permit is granted, the authority must find that "the location, size, design, and operating characteristics of the proposed use will be compatible with adjacent uses, residences, or structures." Zoning Ordinance § 7358(a). The Zoning Ordinance lists items of "consideration," but leaves the authority to consider "any other relevant impact of the proposed use." *Id*. § 7358(a)(6). Additionally, the WTO requires that the decision maker must determine that the proposed facility is appropriately "camouflaged," "consistent with community character," and designed to have minimum "visual impact." *See* WTO §§ 6985, 6987. Finally, the Zoning Ordinance, *inter alia*, allows the County's permitting authority to impose conditions on the use consistent with the objectives of the Zoning Ordinance, *id*. § 7362; to permit seemingly open-ended public hearings, *id*. § 7356 (hearing before grant or denial of use permit), § 7366(h) (hearing on appeal from grant or denial of use permit); and to order revocation or modification of a use permit following a violation, *id*. § 7382 (a)(2). The ordinance

also observes that it is a misdemeanor or infraction to violate a use permit's conditions. *Id.* § 7703.

## II.

Sprint and its co-plaintiff in the district court, Pacific Bell Wireless, LLC, dba Cingular Wireless, brought a prima facie challenge to the WTO, arguing that it was preempted by § 253(a) (removing barriers).[1] Sprint suggested that the "onerous" permitting structure of the WTO, and the discretion retained by the County, prevented it from providing wireless service. Sprint also argued that the four-tier permitting system imposed by the WTO added an additional tier that was not generally applicable to all telecommunications providers, and thus the ordinance discriminated against wireless telecommunications providers in violation of § 253(c) (addressing state and local authority to manage the public rights-of-way) and the Fourteenth Amendment to the Constitution. In addition to a permanent injunction against the enforcement of the WTO, Sprint sought § 1983 money damages and attorney's fees. The County, however, argued that § 253(a) was inapplicable to zoning ordinances which regulate wireless providers. Rather, the County suggested that § 332(c)(7) (preserving local zoning authority) governed the ability of local governments to regulate wireless facility placement and construction, and that Congress provided in § 332(c)(7) the exclusive mechanism to challenge zoning decisions.

The district court first addressed the applicability of § 253(a) when it considered the County's motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss. The court held that the plain language of § 253(a) permitted a facial challenge to a local ordinance, while § 332(c)(7) governed challenges to individual facility placement decisions. Never-

---

[1]The district court dismissed with prejudice the claims of Pacific Bell Wireless on February 8, 2005, pursuant to a stipulation of dismissal filed by the parties.

theless, Sprint's § 253(c) and Fourteenth Amendment equal protection claims failed, according to the court, because § 253(c) is a safe-harbor provision that does not give rise to a separate cause of action. Sprint also failed to meet its burden of refuting the rational basis for the WTO's allegedly discriminatory classification, which the court reasoned was its obligation in order to bring a Fourteenth Amendment claim. Finally, the court permitted Sprint's § 1983 claim to proceed because the County only challenged in its Rule 12(b)(6) motion the applicability of § 253(a).

The County next filed a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings. It argued that § 253(a) did not create a private right of action, and thus Sprint could not employ the statute to seek an injunction or § 1983 damages and fees. The County also argued that the members of its Board of Supervisors, named by Sprint as defendants in their individual capacities, were absolutely immune from damages under § 1983. The district court, applying the factors described in *Cort v. Ash*, 422 U.S. 66, 78 (1975), determined that Congress "impliedly created a private right of action under § 253(a)." The court next recognized the presumption in favor of enforcing federal rights under § 1983 and determined that the TCA did not foreclose the remedy. Finally, the court agreed that the County of San Diego Supervisors were immune from damages in their capacity as legislators and dismissed them from the suit.

Sprint and the County filed motions for summary judgment. Sprint argued that, as a matter of law, the WTO violated § 253(a) and therefore the court should enjoin enforcement of the ordinance and award damages and fees under § 1983. The County, *inter alia*, reasserted its argument that § 332(c)(7) was the provision of the TCA applicable to the placement of wireless telecommunications facilities and thus Sprint could not bring a claim under § 253(a). The court granted Sprint's

request for a permanent injunction, but vacated its earlier ruling that § 253(a) could support a claim for § 1983 damages.[2]

## III.

In general we review a summary judgment order granting a permanent injunction for abuse of discretion. *Washington State Republican Party v. Wash.*, 460 F.3d 1108, 1115 (9th Cir. 2006). "However, 'any determination underlying the grant of an injunction [is reviewed] by the standard that applies to that determination.' " *Id.* (quoting *Ting v. AT&T*, 319 F.3d 1126, 1134-35 (9th Cir. 2003)). Thus, we review the district court's findings of fact for clear error and its determinations of law—including the determination that a local statute is preempted by federal law—*de novo. See Ting*, 319 F.3d at 1135; *see also Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 877 & n.12 (9th Cir. 2006); *Qwest Communications Inc. v. City of Berkeley*, 433 F.3d 1253, 1256 (9th Cir. 2006) (hereinafter "*Berkeley*") (reviewing *de novo* district court's decision that § 253 preempted local right-of-way use ordinance).

## IV.

This appeal presents three related questions of law. The threshold question is whether Sprint may seek a permanent injunction against the enforcement of the WTO under § 253(a) (removing barriers). The second question is whether the WTO violates § 253(a) as a matter of law. *See, e.g.*, *United States v. Bynum*, 327 F.3d 986, 990 (9th Cir. 2003) ("[A] facial challenge to the constitutionality of a statute is a question of law"), *see also United States v. Salerno*, 481 U.S.

---

[2]This case was originally assigned to the District Judge Judith Keep, who ruled on the County's motions to dismiss the case and for judgment on the pleadings. Following Judge Keep's death on September 14, 2004, the case was reassigned to District Judge Barry Ted Moskowitz, who ruled on the parties' motions for summary judgment.

739, 745 (1987). The final question is whether Sprint may recover money damages and fees arising from a violation of § 253(a) under § 1983.

## A.  The Availability of Injunctive Relief

The County first challenges the applicability of § 253(a) (removing barriers) to local zoning ordinances, a matter of first impression in this circuit. We must determine whether, as a matter of law, § 253(a) may preempt a wireless facilities zoning ordinance. The County concedes that § 253(a), which covers all common carriers, is generally applicable to wireless providers, but argues that § 332(c)(7) (preserving local zoning authority) should govern challenges regarding the placement and construction of wireless facilities.

### 1.  Sprint's Ability to Seek Injunctive Relief

As a threshold matter, we must consider whether Sprint has standing to challenge the WTO under § 253(a). The County, in filings before the district court, conceded the availability of injunctive relief under the Supremacy Clause if the WTO was within the preemptive scope of § 253(a). *See* U.S. Const. art. VI, § 2. We nevertheless pause to consider the district court's jurisdiction. *See Juidice v. Vail*, 430 U.S. 327, 331 (1977) (court must consider standing of party under Article III despite failure of parties to raise the issue).

**[1]** We acknowledged in *City of Auburn v. Quest Corporation* that the Supremacy Clause permits the TCA to preempt state and local statutes and regulations, though the court did not squarely address Qwest's standing. *See City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1175 (9th Cir. 2001) (hereinafter "*Auburn*") (observing that Supremacy Clause permits § 253(a) to expressly preempt local laws). *See also Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712-13 (1985) (discussing preemption under the Supremacy Clause); *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96 n.14

(1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."); *Puerto Rico Tel. Co. v. Municipality of Guayanilla*, 450 F.3d 9, 16 (lst Cir. 2006) (declining to reach whether § 253(a) creates a private right because injunctive relief sought under Supremacy Clause); *Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258, 1264 (10th Cir. 2004) (hereinafter "*Santa Fe*") (applying *Shaw* to find Qwest's § 253(a) preemption claim federally justiciable under the Supremacy Clause); *N.J. Payphone Ass'n, Inc. v. Town of West New York*, 299 F.3d 235, 241-42 (3d Cir. 2002) (basing § 253 preemption on Supremacy Clause).

**[2]** The Sixth Circuit has expressed concern that standing under the Supremacy Clause is inappropriate, absent a private statutory right of action. *See TCG Detroit v. City of Dearborn*, 206 F.3d 618, 622 n.1 (6th Cir. 2000). The *TCG Detroit* court declined to approve a case in the District Court for the Western District of Texas that, like *Auburn* and the district court in this case, proceeded under the Supremacy Clause despite finding a lack of a private right under the TCA. *See AT&T Communications v. City of Austin*, 975 F. Supp. 928, 936 (W.D. Tex. 1997), *vacated as moot by*, 235 F.3d 241 (5th Cir. 2000). The Sixth Circuit did not disclose the precise source of its discomfort, but a footnote raised the concern that § 253(d) might vest in the FCC exclusive or primary jurisdiction to preempt state and local regulations. Nevertheless, we will not disturb our approach in *Auburn* because we conclude that the availability of injunctive relief is appropriate under *Shaw*. *See Santa Fe*, 380 F.3d at 1264.

### 2. The Applicability of § 253(a) to Zoning Ordinances Regulating Wireless Telecommunications Facilities

The District Court twice held that § 253(a) may be employed to assert a facial challenge to a wireless facilities

zoning ordinance. Both times the court reasoned that, on the face of the TCA, § 253(a) addresses "State or local statute[s] or regulation[s]" and § 332(c)(7) "decisions regarding the placement, construction, and modification" of facilities. Thus, while § 332(c)(7) may be used to challenge individual zoning decisions, the court held that § 253(a) is a proper vehicle to challenge an entire wireless facilities zoning ordinance.

### a.   The   Distinction   Between   § 253(a)   and   § 332(c)(7)

The distinction between the application of § 253(a) (removing barriers) and § 332(c)(7) (preserving local zoning authority), for purposes of this case, is significant. Both § 253(a) and § 332(c)(7)(B)(i)(II) employ similar language to limit states or localities from prohibiting or effectively prohibiting personal wireless service, the limitation upon which Sprint relies. *Compare* 47 U.S.C. § 253(a) ("No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.") *with id.* § 332(c)(7)(B)(i) ("The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services."). Section 332(c)(7), however, further requires:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction.

*Id.* § 332(c)(7)(B)(v).[3] Moreover, the Supreme Court has

---

[3]In addition to establishing a period of limitations for a claim, § 332(c)(7)(B) contains three substantive limitations on state or local deci-

already held that claims brought under § 332(c)(7) do not support § 1983 damages or fees. *See City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 127 (2005) (holding that "[e]nforcement of § 332(c)(7) through § 1983 would distort the scheme of expedited judicial review and limited remedies created by § 332(c)(7)(B)(v)"). Thus, it could be argued that the period of limitations and certain unavailability of § 1983 damages make § 332(c)(7) a comparatively unattractive vehicle to pursue a facial challenge to a wireless facilities zoning ordinance.

### b.    The Novel Application of § 253(a)

The use of § 253(a) (removing barriers) to preempt an entire wireless facilities zoning ordinance is a new and different application of the TCA. Courts have frequently inquired whether an individual zoning decision is contrary to § 332(c)(7)(B) (preserving local zoning authority). *See, e.g.*, *Omnipoint Communications, Inc. v. City of White Plains*, 430 F.3d 529, 535 (2d Cir. 2005) (applying § 332(c)(7)(B)(i)(II) to determine whether planning board must grant application to construct wireless tower); *MetroPCS, Inc. v. City & County of San Francisco*, 400 F.3d 715, 730-31 (9th Cir. 2005) ("MetroPCS") (applying § 332(c)(7)(B)(i)(II) to determine whether denial of conditional use permit imposed a "general ban" on new wireless service providers); *USCOC of Virginia*

---

sions regarding the placement of wireless facilities. The decision may not "unreasonably discriminate among providers of functionally equivalent services;" "prohibit or have the effect of prohibiting the provision of wireless services;" or be based on "the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(i)(I), (B)(i)(II) & (B)(iv). The section also contains three procedural limitations. The decision regarding placement must be in writing, supported by substantial evidence, and reached "within a reasonable period of time." *Id.* § 332(c)(7)(B)(ii) & (iii). *See U.S. Cellular Tel. of Greater Tulsa L.L.C. v. City of Broken Arrow*, 340 F.3d 1122, 1132-33 (10th Cir. 2003).

*RSA #3 v. Montgomery County Bd. of Supervisors*, 343 F.3d 262, 267-68 (4th Cir. 2003) (applying § 332(c)(7)(B)(i)(II) to determine whether denial of application to construct wireless telecommunication tower had the effect of prohibiting service); *VoiceStream Minneapolis, Inc. v. St. Croix County*, 342 F.3d 818, 833 (7th Cir. 2003) (applying § 332(c)(7)(B)(i)(II) to challenge regarding individual zoning decision). *Cf. Abrams*, 544 U.S. at 120-21 (assuming, *arguendo*, that § 332 creates individually enforceable rights but holding § 1983 damages not available). But, facial challenges to wireless facilities zoning ordinances are rare. *But cf. Nextel Partners Inc. v. Kingston Township*, 286 F.3d 687, 693 (3d Cir. 2002) (finding facial challenge to wireless facilities zoning ordinance brought under § 332(c)(7)(B)(i) moot because of intervening change in ordinance).

The lack of cases challenging zoning ordinances is unsurprising because of the high burden faced by a party asserting a facial challenge. *See Salerno*, 481 U.S. at 745 ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). Indeed, we have observed that it may be particularly difficult to mount a facial challenge against a zoning ordinance:

> Zoning rules—such as those that allow local authorities to reject an application based on "necessity"—may not suggest on their face that they will lead to discrimination between providers or have the effect of prohibiting wireless services. Thus, in most cases, only when a locality applies the regulation to a particular permit application and reaches a decision—which it supports with substantial evidence—can a court determine whether the TCA has been violated.

*MetroPCS*, 400 F.3d at 724.

### c.  Statutory Interpretation of the TCA

**[3]** To decide whether § 253(a) (removing barriers) may be used to invalidate a local wireless facilities zoning ordinance we first examine the plain language of the statute. *See United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1168-69 (9th Cir. 2006). Courts are not, however, "bound by the plain meaning of a statute where its literal application will produce a result demonstrably at odds with the intention of its drafters." *Clark*, 460 F.3d at 1169 (quotation marks and citation omitted). Legislative history may inform the interpretation of a statute's plain language "when there is clearly expressed legislative intention contrary to that language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 433 n.12 (1987) (quotation marks and citation omitted). When a statute's meaning is plain, a court may nevertheless avoid "a result contrary to the statute's purpose or lead to unreasonable results." *United States v. Combs*, 379 F.3d 564, 569 (9th Cir. 2004); *see also United States v. Bahe*, 201 F.3d 1124, 1133-34 (9th Cir. 2000) (examining legislative history).

Here, the County argues that § 332(c)(7) (preserving local zoning authority) specifically maintains local authority to decide where and how wireless facilities are constructed and contains a procedure for challenging those decisions. Congress, therefore, must have intended, according to the County, any challenge to a wireless facilities zoning ordinance to proceed under that section rather than the more expansive § 253(a), which is not limited to issues regarding wireless facility placement. Any other reading would render the reservation of local authority described in § 332(c)(7) moot. The County also relies on the House and Senate conferees understanding of § 332(c)(7), reported in the House Conference Report accompanying the TCA:

> The conference agreement creates a new section 704 [U.S. Code § 332(c)(7)] which prevents Commission preemption of local and State land use decisions and preserves the authority of State and local governments over zoning and land use matters except in the limited circumstances set forth in the conference agreement.

H.R. Conf. Rep. No. 104-458, at 207-08 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124, 222.

### i.    Plain Meaning of the TCA

**[4]** The County's insistence that any challenge to a local zoning ordinance be lodged under § 332(c)(7)(B)(i)(II) ignores the plain meaning and structure of the TCA. Section 253(a) (removing barriers) is located in Chapter 5, "Wire or Radio Communications," of United States Code Title 47. We have recognized the "preemptive language [of § 253(a)] to be clear and 'virtually absolute' in restricting municipalities to a 'very limited and proscribed role in the regulation of telecommunications.' " *Berkeley*, 433 F.3d at 1256 (citation omitted). Section 253 protects all common carriers, and applies to "commercial mobile service" providers unless FCC rulemaking suspends application of the section. *See* 47 U.S.C. § 332(c)(1)(A). The FCC has not exempted mobile service providers from the protections of § 253; to the contrary, FCC decisions apply § 253 to claims that a state or local statute regulating wireless service providers violates the substantive provisions of the TCA.[4] *See, e.g.*, *In re Pittencrieff Communi-*

---

[4]We have not located an FCC decision directly addressing the applicability of § 253 to zoning ordinances—rather than other state and local ordinances such as those regulating franchising—governing wireless providers. The FCC tentatively expressed the opinion that it could invalidate a zoning ordinance under § 253. *See In re Cellular Telecomm. Indus. Ass'n*, 12 F.C.C.R. 11795, 11797 (1997) (request for comment on supplemental pleading cycle). In that administrative proceeding, the CTIA chal-

*cations, Inc.*, 13 F.C.C.R. 1735 (1997), *aff'd sub nom. Cellular Telecomm. Indus. Ass'n v. FCC*, 168 F.3d 1332 (D.C. Cir. 1999). Thus, § 253(a) applies on its face to local ordinances that have the effect of prohibiting wireless service.

Nevertheless, the County contends that applying § 253(a) would frustrate the purpose of § 332(c)(7) (preserving local zoning authority). In *Abrams* the Supreme Court observed that § 332(c)(7) "imposes specific limitations on the traditional authority of state and local governments to regulate the location, construction, and modification of such facilities." 544 U.S. at 115. In that case the Court assumed, *arguendo*, that § 332(c)(7) created "individually enforceable rights," which could be the basis for seeking injunctive relief through the private right of action created by § 332(c)(7)(B)(v). *Id.* at 120, 127. The Court went on to determine that the "expedited judicial review and limited remedies created by § 332(c)(7)(B)(v)" foreclosed enforcement of § 332(c)(7)'s limitations through § 1983. *Id.* at 127.

In the present litigation, however, we are asked to examine the general provisions of § 253(a) rather than the specific limitations of § 332(c)(7). Sprint does not resort to the substantive or procedural limitations that are unique to § 332(c)(7).

---

lenged a moratorium on the construction of telecommunications facilities. The FCC invited comment regarding its tentative conclusion that,

> Section 332(c)(7)(B)(v) does not, however, limit our authority to review local facility siting moratoria which may constitute entry barriers under Sections 253(d) or entry regulations under 332(c)(3).

*Id.* at 11796. The CTIA, however, withdrew its petition for review before the FCC issued a final order expressing its opinion on the applicability of § 253. *See In re Cellular Telecomm. Indus. Ass'n*, 14 F.C.C.R. 9174 (1999). In a separate proceeding, the FCC examined whether a local ordinance limiting the placement of payphones on private land violated § 253(a), and determined that it did not. *See In re Cal. Payphone Ass'n*, 12 F.C.C.R. 14191 (1997).

Rather, the company seeks enforcement of a preemption that is common to both § 253(a) and § 332(c)(7)(B)(i)(II). Thus, we find the distinction that the County draws illusory. Section 253(a) lacks the period of limitations created by § 332(c)(7)(B)(v), but it also lacks the specific limitations that give an individual greater latitude to challenge a zoning decision under § 332(c)(7). The choice to pursue a prima facie challenge under § 253(a) or an individual challenge under § 332(c)(7) is real, but that choice does not imply that one section must undermine the other.

[5] Interpreting § 253(a) to preempt certain local wireless zoning ordinances does not negate the substantive and procedural elements of § 332(c)(7). *See Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991) (courts must make "every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous"). Section 332(c)(7) prescribes a "restrictive private remedy" for individuals seeking "[j]udicial review of zoning decisions." *See Abrams*, 544 U.S. at 121, 122. The procedure for judicial review allows individuals to challenge "any final action or failure to act by a State or local government or any instrumentality thereof[.]" 47 U.S.C. § 332(c)(7)(B)(v). A judicial proceeding must be brought within thirty days of the state's or locality's action or failure to act. *Id*.

[6] The County argues that permitting a facial challenge to an entire ordinance under § 253(a) would create a "giant loophole" in § 332(c)(7). But, that argument ignores § 332(c)(7)'s preferential treatment of challenges to individual zoning decisions and the additional limitations and requirements that § 332(c)(7) places on zoning authorities. A zoning decision might be challenged because it does not comply with the procedural requirements of § 332(c)(7). *See id.* § 332(c)(7)(B)(ii) & (iii) (decision must be in writing, supported by substantial evidence, and reached "within a reasonable period of time."). The decision might also violate the substantive provisions of

the section. *See id.* § 332(c)(7)(B)(i)(I), (II) & (iv) (decision may not unreasonably discriminate among providers, prohibit or have the effect of prohibiting service, or be based on radio emission levels that are acceptable to the FCC). Section 253, by contrast, states only that a statute or regulation may not prohibit or have the effect of prohibiting service. *See id.* § 253(a). The substance of the sections is therefore different and, even though § 253(a) does not place a thirty-day period of limitation on facial challenges, § 332(c)(7)'s period of limitation for challenges to individual zoning decisions would be left intact. *Cf. Abrams*, 544 U.S. at 126 ("[c]onstruing § 332(c)(7) . . . to create rights that may be enforced *only* through the statute's express remedy" (emphasis added)). Ultimately, the difficulty of raising a facial challenge to a zoning regulation, *see MetroPCS*, 400 F.3d at 724*,* would likely prevent the scenario that the County suggests; wireless providers could not simply avoid § 332(c)(7)'s period of limitation by styling their challenges to individual zoning decisions as facial challenges under § 253(a).[5] Rather, § 332(c)(7) would continue to offer a more expedient, and extensive, basis for review.

[7] Additionally, other provisions contained in § 253 suggest that Congress did not perceive a contradiction between § 253(a) and § 332(c)(7). Congress expressly recognized the potential of § 253(a) to interfere with other provisions of § 332. Section 253(e) exempts from preemption § 332(c)(3)

---

[5]The County also argues that we have established a "more lenient standard" for successful facial challenges under § 253(a) than under § 332(c)(7)(B)(i), relying on a supposed conflict between dicta in *MetroPCS*, 400 F.3d at 724, 725 n.3, 727 (alluding to the difficulty under § 332(c)(7)(B) of bringing facial challenge based on a *single zoning decision*) and *Auburn*, 260 F.3d at 1175 (discussing under § 253(a) a facial challenge to a franchise *regulation*). Though we conclude here that Sprint's challenge to the WTO meets the criterion described in *Auburn* for challenging an ordinance, we reject the argument that we have lowered the threshold suggested by *MetroPCS* for a successful facial challenge predicated on a zoning decision.

(addressing limited state regulation of wireless service rates). *See* 47 U.S.C. § 253(e). Congress also excluded from § 253(a)'s preemptive scope state and local regulations requiring "fair and reasonable" compensation for the use of public rights-of-way and requiring telecommunications providers to serve rural areas. *See id.* § 253(c), (f). Had Congress harbored a similar concern that § 253(a) could negate the protections allegedly extended by § 332(c)(7) it could have included a similar exemption, but it did not do so. Because this series of exclusions demonstrates Congress's awareness that § 253 could affect § 332, and because the existing exclusions address traditionally local provinces like the management of rights-of-way, we interpret— *expressio unius est exclusio alterius* —Congress's failure to omit § 332(c)(7) from the reach of § 253(a) as an affirmation of § 253(a)'s applicability to state and local wireless zoning ordinances.[6] *See Clark*, 460 F.3d at 1169; *Austein v. Schwartz (In re Gerwer)*, 898 F.2d 730, 732 (9th Cir. 1990) ("The express enumeration indicates that other exceptions should not be implied.").

## ii.   Legislative History of the TCA

Because the plain language of § 253(a) (removing barriers) permits facial challenges to zoning ordinances, we need only

---

[6]"The expression of one is the exclusion of another." The Supreme Court has recently reminded courts of the limits of this canon of statutory interpretation. It cautioned that the canon "does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (citation omitted). Here, although Sprint does not make direct reference to the canon, it argues that we should interpret Congress's failure to exclude § 332(c)(3) from § 253(a)'s preemptive scope as evidence that Congress intended the two sections to be enforced together. Though one exclusion is alone insufficient to apply the canon, *see Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002), the series of exclusions contained in § 253 represents a sufficient basis to determine that Congress considered, but rejected, excluding § 332(c)(7) from the scope of § 253(a).

examine the legislative history of the TCA to confirm that the language is not "demonstrably at odds with the intention of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982). We conclude that the legislative history of the TCA does not indicate that Congress intended a result contrary to the plain reading of the statute.

Relying on the House Conference Report accompanying the TCA, we have recognized that, "one of the primary purposes of section 332(c)(7) is to protect the legitimate traditional zoning prerogatives of local governments." *MetroPCS*, 400 F.3d at 727 n.5. The conferees inserted § 332(c)(7) (preserving local zoning authority) to rebuff a House provision that "would have given authority to the FCC to regulate directly the siting of wireless communications towers" and thus completely preempt local zoning decisions. *See St. Croix*, 342 F.3d at 828-29.

**[8]** There is no indication, however, that Congress feared § 253(a)'s preemption language would endanger local zoning ordinances it intended to permit under § 332(c)(7). Indeed, both § 253(a) and § 332(c)(7)(B)(i)(II) proscribe substantively the same local regulations: those that prohibit or have the effect of prohibiting personal wireless service. The Conference Report explains, in the context of § 332(c)(7), that "[i]t is the intent of this section that bans or policies that have the effect of banning personal wireless services or facilities not be allowed and that decisions be made on a case-by-case basis." *See* H.R. Conf. Rep. No. 104-458, at 208. The similar language of the sections and the Conference Report demonstrates that § 253(a) is consistent with the substantive provision of § 332(c)(7)(B)(i)(II).

For purposes of this appeal, the principal distinction between the two sections is § 332(c)(7)(B)(v)'s thirty-day period of limitations. The Conference Report does not explain the intent of the limitation, though it is generally consistent with the conferee's requirement that the court selected by the

individual challenging the zoning decision "act expeditiously in deciding such cases." *See* H.R. Conf. Rep. No. 104-458, at 209. We have, however, found no legislative history that suggests Congress intended to limit facial challenges to the thirty-day period following some event, whether the passage of the state or local regulation challenged or a particular zoning decision applying a state or local regulation.

[9] Thus, the legislative history of § 253 and § 332(c)(7) does not undermine our plain reading of the sections. We need not examine the legislative history further.

## B.    Preemption of the WTO

We next consider whether the WTO is preempted by the TCA. The County argues that the additional requirements imposed by the WTO are consistent with general zoning principles and fall short of the conditions that caused our court to preempt the City of Auburn's franchise ordinance. *See Auburn*, 260 F.3d at 1176. Sprint contends that the WTO is an "onerous" system of requirements that shares many of the restrictions that amounted to an effective prohibition on wireless service in *Auburn*. Sprint also argues that the WTO is not "competitively neutral" because it regulates wireless providers in a manner not applicable to all utility providers and likens the degree of regulation to that "usually reserved for landfills, cemeteries and power plants," not utilities.

The district court gleaned a set of concerns from cases discussing preemption of local ordinances under § 253(a). *See Auburn*, 260 F.3d at 1176 (invalidating local franchising ordinance); *Santa Fe*, 380 F.3d 1258 (preempting right-of-way ordinance that, *inter alia*, increased rent, imposed costly new equipment requirement, and permitted unfettered discretion); *Cox Communications PCS, L.P. v. City of San Marcos*, 204 F. Supp. 2d 1260 (S.D. Cal. 2002) (considering whether regulations requiring conditional use permit to install facilities in public right-of-way violated § 253(a)); *Qwest Comm. Corp. v.*

*City of Berkeley*, 146 F. Supp. 2d 1081 (N.D. Cal. 2001) (considering whether public right-of-way ordinance violated § 253(a)). Informed by those opinions, the district court focused on the WTO's application submission requirements, the discretion reserved to the zoning authority, the public hearing requirements, and the criminal penalties for violation of a use permit. The court concluded that the combination of these factors had the effect of prohibiting wireless service in a matter similar to the impermissible franchising ordinance in *Auburn*.

**[10]** In *Auburn* we identified the factors considered by the district court in this case. *See Auburn*, 260 F.3d at 1175-76. Our concerns here are almost identical. The County's WTO, on its face, supplements the Zoning Ordinance by adding submission requirements to an already voluminous list. *See* WTO § 6984. Those requirements are in addition to the open-ended discretion and threat of criminal penalties contained in the Zoning Ordinance. The WTO itself explicitly allows the decision maker to determine whether a facility is appropriately "camouflaged," "consistent with community character," and designed to have minimum "visual impact." *See* WTO §§ 6985, 6987. We find the County's retort—that the elements of the WTO challenged by Sprint are traditional facets of zoning that are unobjectionable for the simple reason that the WTO is a zoning ordinance rather than a franchise or public right-of-way ordinance—unconvincing. Though *Auburn* discussed a franchise ordinance, our concerns in this case are largely the same. We conclude that the WTO imposes a permitting structure and design requirements that presents barriers to wireless telecommunications within the County, and is therefore preempted by § 253(a).

## C.   Section 1983 damages and fees

Finally, we consider the availability of § 1983 damages and fees. The district court, reversing its earlier holding, determined that § 253(a) (removing barriers) does not create a pri-

vate right enforceable through § 1983. The court's holding is consistent with the Tenth Circuit's position, *Santa Fe,* 380 F.3d at 1266-67 (§ 253(a) does not create a private right), but presents a question of first impression in our circuit. *Cf. Bell South Telecomm., Inc. v. Town of Palm Beach,* 252 F.3d 1169, 1191 (11th Cir. 2001) (interpreting § 253 to create an implied private right of action when the challenged regulation concerns the use of public rights-of-way, implicating § 253(c)'s safe-harbor); *TCG Detroit*, 206 F.3d at 624 (same). No other circuit court has reached the issue. The district courts in this circuit have overwhelmingly concluded that § 253(a) neither creates a right enforceable under § 1983, nor implies a separate private right of action.[7] *See Pacific Bell Tel. Co. v. City of Walnut Creek,* 428 F. Supp. 2d 1037, 1054 (N.D. Cal. 2006) (finding that § 253(a) creates no private right enforceable under § 1983); *Qwest Communications Corp. v. City of Berkeley*, 202 F. Supp. 2d 1085, 1090-96 (N.D. Cal. 2001) (finding no implied private right of action under § 253(a) or § 253(c)); *Pacific Bell Tel. Co. v. City of Hawthorne,* 188 F. Supp. 2d 1169, 1172-75 (C.D. Cal. 2001) (finding § 253(c) creates an implied private right of action but that § 253(a) and (b) do not).

---

[7]The question in this case, of whether § 253(a) creates a right enforceable under § 1983, overlaps with but is distinct from the question of whether the statute implies a separate cause of action. As we have earlier explained, "The main difference between an implied cause of action and a right enforceable under Section 1983 turns on the source of the remedy. A plaintiff invoking an implied right of action must demonstrate that Congress intended to create not only a private right but also a private remedy. In contrast, once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983, and the plaintiff need not show any further congressional intent to create a remedy." *Price v. City of Stockton*, 390 F.3d 1105, 1109 n.3 (9th Cir. 2004) (citations and quotation marks omitted). The test in *Cort v. Ash*, 422 U.S. 66 (1975), discussed by the district court, is used to determine whether a statute implies a private right of action, but not for determining whether a statute creates a right enforceable under § 1983.

**[11]** Section 1983 "by itself does not protect anyone against anything," *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617 (1979), and thus the question for us is whether § 253(a) independently confers a right on Sprint. Our inquiry differs from the question of whether Sprint may seek enforcement of § 253(a) by bringing its preemption action under the Supremacy Clause of the Constitution. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106-08 (1989) ("Given the variety of situations in which preemption claims may be asserted, in state court and in federal court, it would obviously be incorrect to assume that a federal right of action pursuant to § 1983 exists every time a federal rule of law pre-empts state regulatory authority." *Id.* at 107-08). Here, three requirements guide our inquiry into whether Congress created a right enforceable under § 1983: "1) that Congress intended the statutory provision to benefit the plaintiff; 2) that the asserted right is not so 'vague and amorphous' that its enforcement would strain judicial competence; and 3) that the provision couch the asserted right in mandatory rather than precatory terms." *Watson v. Weeks*, 436 F.3d 1152, 1158 (9th Cir. 2006) (citing *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997)) (citations omitted). With regard to the first requirement, we have recognized that "congressional intent to benefit the plaintiff must be shown by statutory language phrased in terms of the persons to be benefited. Anything short of an unambiguously conferred right will not support a 1983 action." *Id.* at 1159 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283, 284 (2002)) (citations and quotation marks omitted).

Neither § 253(a), nor, for that matter, any other subpart of § 253, mentions the beneficiaries of the section. Section 253 is phrased only in terms of the parties *restricted* — in this case, states and local entities. Indeed, to the extent that any language of the TCA discusses any beneficiaries, it points to "American telecommunications consumers" rather than telecommunications providers. *See* 110 Stat. at 56 (stating that the Act's purpose is "to promote competition and reduce reg-

ulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies"). In other words, § 253(a) does not designate companies like the plaintiffs in this case as the "identifiable class" required for an enforceable § 1983 right. *See Gonzaga Univ.*, 536 U.S. at 284 (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 576 (1979)). We thus agree with the Tenth Circuit that § 253(a) does not create a right enforceable under § 1983.

[12] To the extent that Sprint also argues Congress created an implied private right of action, we rejected that argument as well. The Court has described four factors that explore whether a statute implies a private right of action, *see Cort*, 422 U.S. at 95, but among those factors Congressional intent is paramount. *See Northwest Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 94 (1981); *Thompson v. Thompson*, 484 U.S. 174, 179 (1988); *Currier v. Potter*, 379 F.3d 716, 725 (9th Cir. 2004) (recognizing the Court's subsequent interpretation of the *Cort* factors). The legislative history of § 253, however, does not support the conclusion that an implied private right of action exists. Senators, in the course of debating the TCA, expressed concern that local governments would bear a heavy burden in defending their ordinances before the FCC in Washington, D.C., and thus inserted § 253(c)'s public rights-of-way provision. *See Santa Fe*, 380 F.3d at 1266-67 (discussing the legislative history of the TCA). It would be inconsistent with this concern to find that Congress intended to expose municipalities to liability through an implied private right of action. We need not examine the remaining *Cort* factors. *Currier*, 379 F.3d at 725-26 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1354 (9th Cir. 1987) ("Even if the first factor were satisfied, we find that plaintiffs have failed to clear the second and third *Cort v. Ash* hurdles[.]")).

**V.**

When Congress passed the TCA in 1996 it expressed its intent to remove barriers inhibiting the development of telecommunications service. Though the act did not "federalize telecommunications land use law," *Southwestern Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 57 (1st Cir. 2001), it established meaningful limits beyond which state and local governments may not inhibit telecommunications by preventing the construction of wireless communications facilities. Accordingly, we determine that local zoning ordinances regulating the construction and placement of wireless communications facilities are within the preemptive scope of § 253(a) (removing barriers). Moreover, the County's WTO is outside the scope of permissible land use regulations because it has the effect of prohibiting wireless communication services. We thus affirm the decision of the district court that § 253(a) preempts the WTO as a matter of law. Finally, we conclude that § 253(a) does not create a private right of action enforceable under § 1983 and affirm the district court's denial of relief under the section.

Our decision today does not reach the permissibility of the County's general zoning ordinance, which was not litigated in this case. We AFFIRM the judgment of the district court.